ZODIAC ENTERPRISES, INC., Appellant, v AMERICAN BROAD-
CASTING COMPANIES, INC., Respondent.

First Department, June 25, 1981

APPEARANCES OF COUNSEL

*Alan M. Gelb* of counsel *(Stuart K. Lesansky* with him on the brief; *Finley, Kumble, Wagner, Heine, Underberg & Casey*, attorneys), for appellant.

*Rafael Pastor (Philip R. Forlenza* with him on the brief; *Hawkins, Delafield & Wood*, attorneys), for respondent.

**OPINION OF THE COURT**

SILVERMAN, J.

This is an appeal from an order of the Supreme Court, Special Term, granting defendant's motion for summary judgment dismissing the complaint, and two related orders.

This action involves disputes between plaintiff (Zodiac), producer of a series of programs under the title "Hollywood Palace", and defendant broadcasting company (ABC) as to their respective rights with respect to the programs produced and telecast from 1964 through 1970 pursuant to a series of contracts and amendments beginning with a main agreement dated December 3, 1963 and including amendments thereto at least as late as an amendment dated October 4, 1968 as of June 27, 1968. Special Term granted summary judgment dismissing the first and third causes of action on the ground of the Statute of Limitations, and the second cause of action for lack of merit.

On the present appeal, Zodiac makes no argument with respect to the first and second causes of action and we deem the appeal abandoned as to those causes of action.

Zodiac presses the third cause of action, which alleges that ABC has breached its agreements with Zodiac by refusing to return the video tapes of the series to Zodiac.

While Zodiac concedes that under the prior agreements ABC owned the tapes, Zodiac contends that, by the amendment of October 4, 1968, ABC transferred ownership of the tapes to Zodiac. We do not agree.

Zodiac relies particularly on a portion of a sentence in that amendment reading as follows: "1. (a) We [ABC] hereby quitclaim to you [Zodiac] our ownership of the title 'Hollywood Palace' and to the format of said series and the programs therein". In particular, Zodiac claims this is a transfer of the "programs" so that the amendment should be read as transferring (i) the title, (ii) the format, and (iii) the programs. ABC contends, however, that all that is transferred is the title and format, and that the phrase " 'of said series and the programs therein' " merely modifies the word "format", i.e., as if the phrase read " 'the format of said series and [of] the programs therein' ".

We note first that nowhere in the complaint does Zodiac specifically rest its claim on this phrase, or, indeed, on the October 4, 1968 amendment. The only even indirect arguable reference in the complaint to the October 4, 1968 amendment is the phrase "Between the years 1963 and

1968 the plaintiff and the defendant entered into a series of agreements".

The interpretation of written instruments is of course a matter for the court.

"[T]he court may resolve ambiguities appearing in the documents on a motion for summary judgment * * *

"The courts have declared on countless occasions that it is the responsibility of the court to interpret written instruments (4 Williston, Contracts, § 601 * * *). The problem of analysis of the instrument is to determine 'what is the intention of the parties as derived from the language employed' (id., § 600, at p. 280). Thus, where a question of intention is determinable by written agreements, the question is one of law, appropriately decided by an appellate court (see *Rentways, Inc.* v. *O'Neill Milk & Cream Co.*, 308 N. Y. 342 * * *), or on a motion for summary judgment. Only where the intent must be determined by disputed evidence or inferences outside the written words of the instrument is a question of fact presented *(O'Neil Supply Co.* v. *Petroleum Heat & Power Co.*, 280 N. Y. 50, 56). (Restatement, 2d, Contracts, T. D. No. 5, § 238, esp. Comment d.)" *(Mallad Constr. Corp. v County Fed. Sav. & Loan Assn.*, 32 NY2d 285, 290-291.)

Further, the language used in a contract must be interpreted in the context of the whole agreement. "[A] contract must be read as a whole in order to determine its purpose and intent, and * * * single clauses cannot be construed by taking them out of their context and giving them an interpretation apart from the contract of which they are a part. *(Atwater & Co.* v. *Panama R. R. Co.*, 246 N. Y. 519; *Becker* v. *Frasse & Co.*, 255 N. Y. 10.) Words considered in isolation may have many and diverse meanings. In a written document the word obtains its meaning from the sentence, the sentence from the paragraph, and the latter from the whole document, all based upon the situation and circumstances existing at its creation." *(Eighth Ave. Coach Corp. v City of New York*, 286 NY 84, 88-89; accord *Rentways, Inc. v O'Neill Milk & Cream Co.*, 308 NY 342, 347, *supra.)*

Considering the phrase not in isolation but in relation to the remainder of the agreement, we think the phrase relied

on by Zodiac does not transfer either the physical tapes or the intangible literary property in the programs. Any ambiguity is completely resolved by the immediately following subdivision (b) of section 1 of the amendment of October 4, 1968, which amends certain provisions of the main agreement "accordingly" insofar as they relate to ownership of "the said title and/or format" and eliminates all ABC's indemnities with respect to "such title and or format" and deletes the provisions of the main agreement relating to Zodiac's furnishing the title and the format and provides that "the title and format" are deemed to be supplied by Zodiac, and included in Zodiac's indemnity to ABC. It is clear that all these references in subdivision (b) to "said" and "such" title and format are references to what was transferred by subdivision (a), thus making it clear that what subdivision (a) transferred was only title and format and not the programs.

Even if Zodiac's interpretation on this point were to be accepted, there would be still another hurdle for Zodiac to overcome. For on its face, the word "programs" would seem to be more appropriately a reference to the intangible literary property involved rather than to the physical recordings thereof. Examination of the main agreement confirms that the word "programs" as used refers not to the physical recordings but to the literary property recorded thereon. Thus paragraph 8 of the main agreement (specifically referred to in subdivision [b] of section 1 of the 1968 amendment) provides: "The programs, all elements thereof and all material incorporated in the programs and/or on which the programs are based and all recordings of the programs are and will be, as between you and us, in perpetuity worldwide our sole and exclusive property." The main agreement thus makes clear that the word "programs" is something different from the "recordings of the program".

Zodiac has requested a declaratory judgment. We are required to declare the rights of the parties even though we disagree with Zodiac. *(Lanza v Wagner*, 11 NY2d 317, 334, app dsmd 371 US 74.) Accordingly, we strike the dismissal of the third cause of action and substitute therefor a direction for judgment declaring that the amendment of Oc-

tober 4, 1968 did not transfer to Zodiac the ownership of the programs therein referred to or of the physical recordings or tapes thereof.

As the proposed amended complaint asserts rights contrary to the determinations both of Special Term and of this court, we affirm the denial of leave to serve the proposed amended complaint.

Order, Supreme Court, New York County (TYLER, J.), entered January 31, 1980, granting defendant's motion for summary judgment dismissing the complaint and directing final judgment for defendant, should be modified, on the law, to substitute for the dismissal of the third cause of action a direction for judgment declaring that the October 4, 1968 amendment of the contract between the parties did not transfer to plaintiff ownership of the programs therein referred to or of the physical recordings thereof, and the order should be otherwise affirmed, with costs.

Appeal from order of Supreme Court, New York County (TYLER, J.), entered June 13, 1980, denying reargument of the foregoing order, should be dismissed, without costs, as nonappealable.

Order, Supreme Court, New York County (TYLER, J.), entered June 13, 1980, denying plaintiff's motion to amend its complaint, should be affirmed, without costs.

KUPFERMAN, J. (dissenting). The complaint should be reinstated, summary judgment denied and Zodiac's motion for leave to replead granted.

The amendatory agreement of 1968 upon which Zodiac bottoms its claim was drafted by ABC. Therefore, ABC cannot take refuge in ambiguity.

The majority opinion, innocent of the implications of the determination, brushes aside the need for a conclusive new pleading setting forth the issues, and denies even the right to replead.

Just as silent films may have value in an era of sound, and black and white films in an era of color, so, too, tapes of old television programs may have distinct value. (Cf. Rights in New Media, 19 Law and Contemporary Problems [1954], p 172.)

These tapes or physical property as distinct from the literary property therein, have a function of their own. The rights in a film classic can be of no value if the physical negative or a print thereof is not available. The physical property may have a distinct life of its own albeit it may not be used without at some time having the underlying or inherent literary rights. (See *Rohauer v Killiam Shows*, 551 F2d 484, 494, cert den 431 US 949.)

The initial agreement between the parties conceded as the property of ABC: "8. The programs, all elements thereof and all material incorporated in the programs and/or on which the programs are based and all recordings of the programs are and will be, as between you and us, in perpetuity worldwide our sole and exclusive property."

The amendatory agreement quitclaimed the title and the format and the programs therein and specifically provided in subdivision (b) of section 1 thereof: "Paragraph 8 of the Main Agreement and any other paragraphs of the Main Agreement and of any of the amendments thereto which provide that we own the said title and/or format and which indemnify you and others with respect to the use thereof are hereby accordingly amended by deleting *all provisions asserting our said ownership*" (emphasis added).

Considering the fact that the rights retained, if any, may not be used to invade the rights transferred *(Manners v Morosco;* 252 US 317), and there is an implied covenant with respect to the quitclaim, of good faith and fair dealing *(Kirk La Shelle Co. v Armstrong Co.,* 263 NY 79, *Underhill v Schenck,* 238 NY 7), it cannot be said as a matter of law that the ownership of the physical recordings was not transferred to Zodiac.

Ross, J. (dissenting). There is one issue of significance in this matter. Does the 1968 contract between the parties clearly set forth the intentions of the parties so that no ambiguity exists, or is there such ambiguity in this contract as raises a triable, material issue of fact? It appears to me that there is a substantial issue of fact which necessarily cannot be determined in advance of the trial.

Plaintiff is an independent television producer and produced for the corporate defendant a weekly television series

entitled "Hollywood Palace". This show was broadcast by the defendant network during the years 1964 through 1970.

Between the years 1963 to 1968, the agreement between the parties provided that defendant owned the title, format and tapes to the "Hollywood Palace" program. In 1968, the parties restructured this agreement. The new agreement provided in pertinent part that: "1.(a) We (defendant) hereby quitclaim to you our ownership of the title 'Hollywood Palace' and to the format of said series and the programs therein".

It is the plaintiff's position that this language deeds to it the master prints or tapes of "Hollywood Palace". The defendant contends that these prints and tapes were the title of ABC Films, whose stock had been owned by the defendant, but was subsequently sold pursuant to an FCC directive and were not included in the "quitclaim" as set forth above.

What lends credence to the conclusion that the 1968 agreement did reconvey to the plaintiff these tapes and prints is that the plaintiff now assumed the total financial burden for production of the series. In prior years, the costs of creation and production of the series were shared by these parties.

In addition, under this subsequent agreement the plaintiff was permitted to produce a sequel to the "Hollywood Palace" series, to be called "Hollywood Palace II". If plaintiff desired to bring this proposed project to fruition, it would surely require the master prints so as to make certain that it would not be faced with competition from rebroadcasts of "Hollywood Palace I".

The ambiguity thus created has affected the relationship between these parties since at least 1968. When a party moves for summary judgment, the determination at Special Term is limited to fact finding and not issue determination *(Esteve v Abad,* 271 App Div 725). Surely the facts before this court demonstrate that a substantial question exists as to what was exactly conveyed pursuant to the 1968 agreement. Common sense would reason that conveyance of the title and format alone, without the master tapes is of

limited value. "Summary judgment should be denied where there is any doubt, at least any significant doubt, whether there is a material, triable issue of fact" *(Phillips v Kantor & Co.*, 31 NY2d 307, 311). I am of the opinion that there exists a significant doubt as to what was "quitclaimed" by defendant to the plaintiff.

Accordingly, the order of Supreme Court, New York County (TYLER, J.), entered on January 31, 1980 which granted the defendant's motion for summary judgment and dismissed the complaint should be reversed, on the law, the complaint reinstated and the motion denied.

MURPHY, P. J., and SANDLER, J., concur with SILVERMAN, J.; KUPFERMAN and ROSS, JJ., dissent in separate opinions.

Order, Supreme Court, New York County, entered on January 31, 1980, modified, on the law, to substitute for the dismissal of the third cause of action a direction for judgment declaring that the October 4, 1968 amendment of the contract between the parties did not transfer to plaintiff ownership of the programs therein referred to or of the physical recordings thereof, and otherwise affirmed. The respondent shall recover of appellant $75 costs and disbursements of this appeal. The appeal from the order entered on June 13, 1980 denying reargument is dismissed as nonappealable, without costs and without disbursements. The order entered on June 13, 1980 denying plaintiff's motion to amend its complaint is affirmed, without costs and without disbursements.