■ 350 EAST 30TH PARKING, LTD., Respondents, v BOARD OF MANAGERS OF THE 350 CONDOMINIUM, Appellant. [720 NYS2d 128] —Order, Supreme Court, New York County (Lorraine Miller,

J.), entered November 30, 1999, upon reargument, adhering to prior determination of September 22, 1999, which, to the extent appealed from as limited by the briefs, denied defendant's motion for summary judgment and granted plaintiffs' cross motion for a declaration that the base rent for the months of September and October 1999 be $21,750, unanimously reversed, on the law, without costs, and defendant's motion granted solely to the extent of declaring the base rent to be $31,629.78. Appeal from order, same court and Justice, entered September 22, 1999, unanimously dismissed, without costs.

In dispute on this appeal is the amount of rent plaintiffs 350 East 30th Parking, Ltd., and 350 East 30th Management, Ltd. (collectively Tenant) owe defendant, The Board of Managers of the 350 Condominium (the Landlord), for the last two months under a 12-year lease for a commercial garage, entered into on November 1, 1987, and ending on October 30, 1999. The lease contained a 10-year renewal option (and an additional three-year renewal option), which plaintiffs have exercised. Under article 52 of the lease, the annual base rent immediately prior to the termination of the lease is one of two alternatives for determining the rental value during the renewal period (the fair market rent is the other one), the controlling one being the greater of the two.

Under the original lease, the annual base rent for the first three years was $215,000 per year increased by 50% of the Cost of Living Adjustment or COLA (as defined in the lease); $215,000 per year increased by 75% of the COLA for years fourth through sixth; and $225,000 per year increased by 100% of the COLA for years seven through twelve. A stipulation entered into on September 12, 1990, as a result of a summary proceeding, changed the annual base rent for the last and relevant period (that is, years seven through twelve or November 1, 1993, through October 30, 1999) to $261,000, or $21,750 per month, plus 100% of the COLA.

Thereafter, the lease, as amended by the stipulation, underwent four more modifications by written agreements in April 1993, November 1994, May 1996, and November 1997. The first modification agreement in paragraph 1 reduced the base rent for March 1, 1993, through February 28, 1994 (the Rent Reduction Period) to $191,000.04, or $15,916.67 per month without the COLA. At the end of the Rent Reduction Period, the base rent was to revert to $21,750 per month plus 100% of the COLA as stated in the stipulation. The second modification agreement in paragraph 1 reduced the base rent for December 1, 1994, through November 30, 1995, to $15,000

per month, without the COLA. Paragraph 3 provided that at the end of the Rent Reduction Period, "Base Rent and Additional Rent shall be due and owing to Landlord by Tenant in accordance with the terms and conditions of the Lease as amended. (For example, commencing with the month of December 1995, the Base Rent shall be $21,750.00 per month, plus a 100% COLA adjustment, as provided in the Stipulation)." The third modification agreement, which covered May 1, 1996, through April 30, 1997, was almost identical to the second except for the dates. The fourth and final modification agreement commenced on November 1, 1997, and ended on August 31, 1999, two months before the end of the lease on October 1999, and set the base rent at $21,750, the same rate as stated in the stipulation except that it excluded the COLA (approximately $9,000). Paragraph 3 of the fourth modification agreement provided that for the months of September and October 1999, "Base Rent and Additional Rent shall be due and owing to Landlord by Tenant in accordance with the terms and conditions of the Lease, as amended." This sentence, however, unlike the second and third modifications, was not followed by the parenthetical "(For example, commencing with the month of May 1997, the Base Rent shall be $21,750.00 per month, plus a 100% COLA adjustment, as provided in the Stipulation)." Paragraph 3 of the first modification agreement referred explicitly to the stipulation.

The IAS Court rejected the Landlord's argument that "the 100% COLA adjustment necessarily was to be included in the last two months' rent, just as previously agreed in the prior three modification agreements, and to read numbered paragraph 3 any other way would be to obviate the need to have a separate Rent Reduction Period spelled out in numbered paragraph 1." Instead, it held that the lack of the parenthetical rendered the fourth modification agreement ambiguous as to whether the base rent for September and October 1999 would include the COLA, and resolved the ambiguity against the drafter of the lease, the Landlord. It also found persuasive Tenant's argument that since the fourth modification agreement actually raised the monthly rent by $6,750, it provided no benefit other than excluding the COLA for the months of November 1, 1997, through the end of the lease, October 30, 1999, even though it noted Landlord's argument that the benefit was the absence of the COLA during the Rent Reduction Period.

After granting Landlord's motion to reargue, the IAS Court adhered to its original order granting summary judgment in

plaintiffs' favor. While the court recognized that both sides were represented by counsel in negotiations over each lease modification agreement, it nevertheless was troubled by defendant's failure to explain why paragraph 3 of the fourth modification agreement, unlike paragraph 3 of the previous modification agreements, lacked the parenthetical example specifically stating the COLA was to be excluded for the final two months. The IAS Court also denied Landlord's request for a hearing to determine the parties' intent, finding it a waste of judicial resources, in light of the fact that the fair market rent was apparently higher than the amount the base rent would be with the COLA included.

On appeal, Landlord argues that the amount of annual base rent payable as of October 1999 is still an issue because Tenant has the right to challenge Landlord's fair market rent determination. More importantly, Landlord argues that taking the language of the original lease and its numerous modifications as a whole, and upon a fair and reasonable interpretation of them, the base rent for the months of September and October 1999 must be interpreted to include a 100% COLA adjustment. The parties agree that base rent with the COLA adjustment is $31,629.78 and $21,750 without it. Finally, Landlord argues that the IAS Court erred in denying its alternative request for an evidentiary hearing or trial to determine the meaning of the term "base rent." While we agree that no hearing was necessary, we hold that the IAS Court erred in finding that the Landlord was not entitled to any COLA adjustment for September and October 1999.

Where a lease is subsequently modified, the lease and its modifications must be taken together and construed as one contract in order to carry out the parties' intent (*see* 74 NY Jur 2d, Landlord and Tenant, § 59 [1999]). If a lease and its modifications are straightforward and unambiguous, the interpretation of the entire contract is a question of law for the court to make without resort to extrinsic evidence (*Ruttenberg v Davidge Data Sys. Corp.*, 215 AD2d 191). Moreover, a contract as a whole should not be interpreted in a way that would leave one of its provisions without force or effect (*Westview Assocs. v Guaranty Natl. Ins. Co.*, 264 AD2d 307, *revd on other grounds* 95 NY2d 334; *85th St. Rest. Corp. v Sanders*, 194 AD2d 324).

Applying these principles to this case, we find that, as a preliminary matter, the lease and its numerous modifications are straightforward and unambiguous, such that the interpretation of those documents presents a question of law for the court

to resolve without resort to extrinsic evidence. Thus, the IAS Court property denied defendant's application for a hearing as to the definition of the term "base rent."

It is clear from the lease and its modifications that the parties intended for the base rent for September and October 1999 to include the COLA. Specifically, the phrase of paragraph 3 of the fourth modification agreement stating that "Base Rent and Additional Rent shall be due and owing to Landlord by Tenant in accordance with the terms and conditions of the Lease, as amended" refers to the lease as amended by the stipulation and not by the fourth modification agreement itself. This interpretation is consistent with the parties' intent as reflected in the stipulation amending the lease and the first three modifications to the lease as amended. In increasing the rent, the stipulation maintained the inclusion of 100% of the COLA during the relevant period. What each modification agreement did was reduce the rent and exclude the COLA during the Rent Reduction Period, after which the base rent would revert back "in accordance with the terms and conditions of the Lease, as amended"; that is, to $21,750 plus 100% of the COLA. The language in the second and third modification agreements explaining the phrase quoted constitute surplusage, as the meaning of the phrase is self-evident. Defendant's failure to include the parenthetical surplusage in paragraph 3 of the fourth modification agreement does not express any intent by the parties to make the modification agreement refer to itself rather than the lease as amended by the stipulation. Thus, it is clear that the parties intended that, beginning in September 1999, the base rent would revert to $21,750 per month plus 100% of the COLA.

To hold, as the IAS Court did, that the base rent for September and October 1999 is $21,750 per month without the COLA would render paragraph 3 of the fourth modification agreement without force or effect. Paragraph 1 of the fourth modification agreement undisputedly provides for a base rent for the period November 1, 1997, through and including August 31, 1999, in the amount of $21,750 without any COLA adjustment. The fact that September and October 1999 were excluded from the Rent Reduction Period and made a subject of paragraph 3 indicates that the parties intended to treat these last two months of the lease differently from the months listed in paragraph 1 of the fourth modification agreement. Moreover, given that the last base rent prior to the expiration of the lease plays an important factor in the determination of the rent for the renewal period, it is obvious that the Landlord sought to prevent the Rent Reduction Period from affecting the

rental rate for the renewal period. To overlook these circumstances would in effect allow "form" to swallow "content" (*Tantleff v Truscelli*, 110 AD2d 240, 246, *affd* 69 NY2d 769). Concur—Rosenberger, J. P., Nardelli, Williams, Mazzarelli and Wallach, JJ.