OPINION OF THE COURT
 

 Smith, J.
 

 The issue here is the method of calculating additional rent pursuant to a sublease agreement.
 

 Bombay Realty Corporation owns property located at 201 Wolf Road, Town of Colonie. In 1975, it leased the property to Colonie Seafood Shoppe, Inc. for a period of 20 years, with two automatic five-year extensions. In 1991, Colonie subleased the property to Magna Carta Restaurants, Inc. for a period of approximately 16 years. From the initial 1975 lease until March 1998, a restaurant known as Long John Silver’s was maintained at the location. In April 1998, after the restaurant closed, Magna Carta sublet the property to appellant, Cellular 2000 and Beyond, LLC. Continuing the language in the prior lease, Cellular agreed to pay to Magna Carta a monthly rent of $3,400 from which Magna Carta would pay $2,000 to Bombay. In addition, Cellular agreed to pay to Bombay “percentage rent in the amount of 5% of any gross sales as defined in the original lease above $480,000.” The lease defined “gross sales” to
 
 *126
 
 mean the “income generated by the business conducted by the lessee on the demised premises including income derived from the sale of all services and all products whether for cash or for credit.”
 

 Cellular is a retail communications store that sells cellular telephones, pagers, chargers and related accessories. When purchasing a cellular telephone, a customer can sign a contract with Southwestern Bell Mobile Services (now known as Cingular Wireless) for a variety of cellular phone service plans. From that point on, Southwestern bills the customer directly, receives all of the revenues generated by those customers for phone service, and pays Cellular based upon a commission schedule, as well as a residual fee.
 
 [1]
 

 In calculating its gross sales for the percentage portion of the lease, Cellular included only its earned commissions, and not the full amount received by Southwestern. In July 1999, the end of its first fiscal year, Cellular submitted a statement to Bombay as required by the lease so that gross sales could be determined. Bombay rejected the statement, arguing that it was inaccurate because it reported only Cellular’s commissions instead of the full value of the contracts customers signed with Southwestern. Bombay proceeded to make several written demands for the additional information from Cellular. In December 1999, after Cellular failed to provide the requested documentation, Bombay brought a RPAPL article 7 action in Supreme Court against Magna Carta and Cellular seeking the additional amount of the rent required if “gross sales” were interpreted to mean sales of Southwestern services to customers signed by Cellular.
 

 Supreme Court dismissed the portion of the petition in which Bombay sought possession of the premises. The court stated that it could not determine from the papers whether Cellular had complied with the terms of the lease as to its reporting requirements and ordered Cellular to turn over the documentation requested by Bombay. When Cellular furnished only documentation of its commissions, Supreme Court granted summary judgment in favor of Bombay against Cellular, holding that Bombay was entitled to additional rent in the sum of $9,834.22. The court also denied Cellular’s cross motion for summary judgment.
 

 
 *127
 
 The Appellate Division affirmed, stating: “to base [Cellular’s] added rent on the actual profit derived from the sale of cellular telephone service plans rather than on the gross amount of the sales would constitute a substantial deviation from the compensation methodology of the original lease and have the effect of depriving petitioner of its reasonably expected return on its investment.” (293 AD2d 947, 947-948 [2002].) We granted leave and now reverse.
 

 The core of the issue before us is whether the value of the service contracts is properly included in the lessee’s annual “gross sales.” We hold that the term “gross sales” includes only the income payable to Cellular and does not include income resulting from plans entered into by a customer and payable to Southwestern, a third party.
 

 All parts of a contract must be read in harmony to determine its meaning
 
 (Ronnen v Ajax Elec. Motor Corp.,
 
 88 NY2d 582, 587, 589 [1996]). One portion of the lease should not be read so as to negate another portion. In order to determine the meaning of income, we need to read the entire lease.
 

 Reading the lease as a whole, the contractual term “gross sales” must be tied to the gross income actually received by the lessee, Cellular. The sublease provides that the additional rent is five percent of the
 
 lessee’s
 
 annual gross sales. It is clear, however, that Cellular’s customers directly pay Southwestern— not Cellular — for the service contracts. Cellular’s income in relation to service contracts comes from Southwestern only. Thus, the gross income Cellular derives from the sales of goods and services consists of the commissions received from Southwestern, not the total value of the contracts paid by customers to Southwestern.
 

 According to the lease, at the end of each fiscal year, the lessee must report the gross sales, as attested to by an officer of the lessee’s company, to the lessor. The lessor shall have access to the lessee’s records at all reasonable times in order to verify the lessee’s reported information.
 
 [2]
 
 Only the outside third party, Southwestern, which administers the cellular telephone plans, would have access to the “income” earned on a particular
 
 *128
 
 account.
 
 [3]
 
 This information would not be maintained within Cellular’s books. The “reasonable expectation and purpose of the ordinary business [person] when making an ordinary business contract” would not require an outside third party to voluntarily open up its books for Cellular
 
 (Uribe v Merchants Bank of N.Y.,
 
 91 NY2d 336, 341 [1998] [citations and internal quotation marks omitted]).
 

 Accordingly, the order of the Appellate Division should be reversed, with costs, respondent’s motion for summary judgment denied and the cross motion for summary judgment by appellant Cellular 2000 and Beyond, LLC granted.
 

 Chief Judge Kaye and Judges Ciparick, Wesley, Rosenblatt, Graffeo and Read concur.
 

 Order reversed, etc.
 

 [1]
 

 . Cellular is paid a sign-up commission of up to $300. Cellular also receives a residual fee based upon the airtime and monthly access charges attributable to the subscriber activated by Cellular.
 

 [2]
 

 . Specifically, the original lease defined “Annual gross sales” as “income generated by the lessee during the lessee’s fiscal year.” The lease also provided: “[t]he lessee shall at the end of each of its fiscal years provide the lessor with evidence of its gross sales in the form of a report attested by an officer of the corporation. The lessor shall have at all reasonable times access to the lessee’s records and accounts to he kept by the lessee in a businesslike manner at its Wichita, Kansas, offices.”
 

 [3]
 

 . Income on a particular account includes: the base contract, any fees associated with the early cancelling of the base contract, any applicable roaming charges accessed during the life of the base contract, fees for minutes in excess of the plan minutes, feature charges, toll, directory assistance, any additional fees which will apply for contract upgrades (which can be made at any time, at the customer’s request) and any other miscellaneous charges.