[767 NYS2d 99]

Excel Graphics Technologies, Inc., Respondent, v CFG/
AGSCB 75 Ninth Avenue, L.L.C., Appellant.

First Department, November 18, 2003

APPEARANCES OF COUNSEL

*Penn Proefriedt Schwarzfeld & Schwartz (Sharyn A. Tritto and Steve Mongiaracina of counsel),* for respondent.

*Fischbein Badillo Wagner Harding (Menachem J. Kastner, Todd V. Lamb and Jolie Ann DeSaro-Calella of counsel),* for appellant.

## OPINION OF THE COURT

SULLIVAN, J.

In this action by a commercial tenant seeking a declaration of waiver as to a lease requirement of prior written consent to subletting, the landlord appeals from the grant of the tenant's application for a *Yellowstone* injunction tolling the time to cure the alleged lease violation of subletting without consent and the denial of its cross motion to dismiss the complaint pursuant to CPLR 3211 (a) (1) and (7).

Defendant is the landlord of a building known as the Chelsea Market, located at 75 Ninth Avenue in New York City, a portion of the third floor of which (the premises) is rented to plaintiff, a commercial tenant. Pursuant to a written lease dated December 1, 1991, defendant's predecessor, Manark Associates, originally leased a portion of the building's ground floor to plaintiff's predecessor, Trade Color Offset Corp. Subsequently, on June 5, 1995, by written agreement between Manark, as landlord, and A&D Danitoni, Inc., another predecessor of plaintiff, as tenant, that lease was amended to allow Danitoni to relinquish possession of the ground floor leased premises and take possession of the premises.

The lease provides, clearly and unambiguously, that the tenant is forbidden from subletting the premises, or any portion thereof, without the landlord's prior written consent, which shall not unreasonably be withheld. Should the tenant wish to sublet all or any portion of the premises, the tenant is required to send its request in writing to the landlord and include with such request the name of the proposed subtenant (or its principals, if the tenant is other than an individual), the nature of its business, information as to its financial responsibility and standing and such other information as the landlord might reasonably require.

The receipt of a written request for permission to sublet triggers certain rights of the landlord under the lease. In the event

the request is for permission to sublet the entire premises, the landlord has the right to terminate the lease and recapture possession of the premises as of the proposed date of the commencement of the sublease. In determining the reasonableness of the landlord's rejection of the request, the relevant factors under article 9.05 of the lease are, among other things, the restrictions contained in the leases of other tenants in the building, the financial condition of the proposed subtenant, the effect the proposed subtenant's occupancy on the "operation and maintenance" of the building and whether the proposed sublease is at a rental rate less than the market rate for other space in the building. Essentially, article 9.05 affords the landlord control over who occupies the building, the purpose for which its building is used and whether the financial terms of the subleases conflict with other rentals in the building.

In addition to the rights triggered by a request for permission to sublet, the lease affords certain other protections to the landlord in the event of either an approved sublet or failure to obtain prior written consent to sublet, each of which is intended to preclude the possibility of an unintended waiver by the landlord. For example, the landlord's consent to one subtenant does not relieve the obligation to obtain prior written consent as to future sublets (art 9.01), and the listing of the subtenant's name on the door or building directory shall not be deemed a consent (art 9.07). The lease also contains general nonwaiver clauses providing that the landlord's acceptance of rent with knowledge of any breach of the lease is not to be deemed a waiver of such breach (art 29.02 [b]) and that the landlord's failure to insist on the strict performance of a lease obligation shall not be construed as a waiver (art 29.01).* A merger clause requires that any waiver of a lease provision be in writing signed

---

* Article 29.01 states:

"The failure of Landlord to insist in any one or more instances upon the strict performance of any one or more of the obligations of this lease, or to exercise any election herein contained, shall not be construed as a waiver or relinquishment for the future of the performance of such one or more obligations of this lease or of the right to exercise such election, but the same shall continue and remain in full force and effect with respect to any subsequent breach, act or omission. No agreement hereinafter made between Landlord and Tenant shall be effective to change, modify, waive, release, discharge, terminate or effect an abandonment of this lease, in whole or in part, unless such executory agreement is in writing, refers expressly to this lease and is signed by the party against whom enforcement of the change, modification, waiver,

by the party against whom enforcement of the waiver is sought (*id.*).

During a deposition on July 16, 2002 in a related action between the same parties, plaintiff's treasurer admitted that eight entities were occupying or subletting the premises. It is undisputed that plaintiff put the subtenants into possession without defendant's prior written consent and that plaintiff is collecting rent and profiting from the alleged illegal subtenancies. Indeed, plaintiff admits that it has a "sweetheart" lease and that its rent is "significantly" lower than market value. After plaintiff's treasurer testified, by written notice dated July 18, 2002, defendant served a default notice stating that plaintiff was in violation of the lease by virtue of the subletting without prior written consent.

In response to the default notice, plaintiff commenced this action seeking a declaration that defendant, through its conduct, waived the prior written consent requirement of the lease. Simultaneously therewith, it sought a *Yellowstone* injunction against termination of the lease. Admitting that it had placed the subtenants in possession without defendant's prior written consent, plaintiff cited, in support of its claim of waiver, that defendant consented to the subletting, that the subtenants' names are listed on the building directory and that defendant accepted rent from plaintiff with knowledge of the subtenancies.

Defendant opposed the motion for *Yellowstone* relief and cross-moved to dismiss the complaint based upon documentary evidence (CPLR 3211 [a] [1]). Specifically, defendant argued that the two factors relied upon by plaintiff to support its waiver claim were negated by the express, clear and unequivocal lease language, which specifically provided that neither the listing of subtenants on the building directory nor the acceptance of rent with knowledge of the tenant's breach of the lease constituted a waiver. In the alternative, defendant argued that plaintiff was not entitled to *Yellowstone* relief because subletting without the landlord's prior written consent is incurable as a matter of law. In opposition to the dismissal motion, plaintiff cited the two grounds asserted in support of its claim of waiver as well as defendant's course of conduct in never insisting on written requests to sublet. Responding to defendant's argument that its breach in subletting without prior written consent was incur-

release, discharge or termination or effectuation of the abandonment is sought."

able, plaintiff asserted that if it were unsuccessful in proving a waiver it was prepared to commence summary proceedings to terminate the subtenancies.

Rejecting the argument that subletting without consent is incurable, Supreme Court granted a *Yellowstone* injunction, conditioned solely on plaintiff's continued payment of rent, and, finding issues of fact as to whether defendant's knowledge, acquiescence or active involvement in the subletting constituted a waiver of the lease prohibition, denied defendant's cross motion to dismiss. The complaint should have been dismissed.

Pursuant to CPLR 3211 (a) (1), where the "documentary evidence submitted conclusively establishes a defense to the asserted claims as a matter of law," dismissal is warranted (*Leon v Martinez*, 84 NY2d 83, 88 [1994]). It bears noting that "[w]hile a complaint is to be liberally construed in favor of plaintiff on a CPLR 3211 motion to dismiss, the court is not required to accept factual allegations that are plainly contradicted by the documentary evidence" (*Robinson v Robinson*, 303 AD2d 234, 235 [2003]). A written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms (*R/S Assoc. v New York Job Dev. Auth.*, 98 NY2d 29, 32 [2002]). Courts "are obliged to interpret a contract so as to give meaning to all of its terms" (*Mionis v Bank Julius Baer & Co.*, 301 AD2d 104, 109 [2002]). Here, the lease provisions unambiguously and unequivocally negate the two essential facts asserted by plaintiff in support of its claim of waiver as alleged in the complaint.

Waiver is the voluntary abandonment or relinquishment of a known right (*Jefpaul Garage Corp. v Presbyterian Hosp.*, 61 NY2d 442, 446 [1984]). There, like here, the tenant argued that, by accepting rent with knowledge of the tenant's violations and without terminating the lease, the landlord had waived the lease violations as a matter of law. As here, the lease contained a nonwaiver and merger clause that provided: "The receipt by Landlord of rent with knowledge of the breach of any covenant of this lease shall not be deemed a waiver of such breach and no provision of this lease shall be deemed to have been waived by Landlord unless such waiver be in writing signed by the Landlord" (*id.*). The Court held that tenant's waiver argument was barred by the clause, stating, "Its language is clear and unambiguous. The parties having mutually assented to its terms, the clause should be enforced to preclude a finding of waiver of the conditions precedent to renewal" (*id.*). Thus, it is

clear that the parties to a commercial lease may mutually agree that conduct, which might otherwise give rise to an inference of waiver, shall not be deemed a waiver of specific bargained-for provisions of a lease (*see Monarch Info. Servs. v 161 William Assoc.*, 103 AD2d 703 [1984]).

Here, the lease specifically provides that the listing on the building directory of the names of the subtenants whose sublets have not received the landlord's prior written consent shall not be deemed consent to the sublet. In addition, the lease specifically provides that the landlord's acceptance of rent with knowledge of the tenant's breach of the lease shall not be deemed a waiver of such breach. Thus, Supreme Court erred in disregarding the clear, unambiguous terms of this negotiated lease; its determination "effectively render[ed] meaningless a part of the contract" (*Helmsley-Spear, Inc. v New York Blood Ctr.*, 257 AD2d 64, 69 [1999]; *see A & J Corp. III v VW II*, 303 AD2d 430 [2003]), i.e., articles 9.07 and 29.02 (b) of the lease, and failed "to give meaning to all of its terms" (*Mionis v Bank Julius Baer & Co.*, *supra* at 109).

In addition to the pertinent specific nonwaiver clause involved, article 9.07 (the listing of any name other than that of the tenant on the doors of the demised premises or the building directory), the lease contains two general nonwaiver clauses: article 29.01 (the landlord's failure to insist on strict performance of a lease obligation/no oral modification) and article 29.02 (b) (the landlord's receipt of rent with knowledge of a breach of a lease obligation). Since each of plaintiff's factual arguments in support of its waiver claim is negated by the express language of the lease, the cross motion to dismiss based on documentary evidence should have been granted. Supreme Court's reliance on *Simon & Son Upholstery v 601 W. Assoc.* (268 AD2d 359 [2000]) is misplaced. In that case, the prior landlord's "active involvement" in approving alterations made to the premises so that it could be used as a photography studio (a prohibited use under the lease), in providing the tenant with parking for the studio, in accepting rent from the photography tenant and using the studio in connection with a sales brochure for the building, all wholly inconsistent with the express terms of the lease, were held to be sufficient to "indic[ate] that the reasonable expectations of both parties under the original lease were supplanted by subsequent actions" (*id.* at 360). In this case, however, there is no similar "active involvement" on the part of defendant indicating an agreement to modify the lease.

Since plaintiff had no case on the purely legal issue of waiver of the lease prohibition against subletting, Supreme Court also erred in granting a *Yellowstone* injunction where there is no issue for future determination.

Accordingly, the order of the Supreme Court, New York County (Marcy Friedman, J.), entered on or about October 28, 2002, which granted plaintiff's motion for a *Yellowstone* injunction and denied defendant's cross motion to dismiss the complaint, should be reversed, on the law, with costs and disbursements, the cross motion granted, the motion dismissed as academic and the *Yellowstone* injunction vacated, effective 10 days after service of a copy of this order with notice of entry. The Clerk is directed to enter judgment in favor of defendant dismissing the complaint.

Tom, J.P., Rosenberger and Gonzalez, JJ., concur.

Order, Supreme Court, New York County, entered on or about October 28, 2002, reversed, on the law, with costs and disbursements, defendant's cross motion to dismiss the complaint granted, plaintiff's motion dismissed as academic and the *Yellowstone* injunction vacated, effective 10 days after service of a copy of this order with notice of entry. The Clerk is directed to enter judgment in favor of defendant dismissing the complaint.