[784 NYS2d 63]

150 BROADWAY N.Y. ASSOCIATES, L.P., Respondent, v MARK L. BODNER et al., Appellants.

First Department, November 4, 2004

**APPEARANCES OF COUNSEL**

*Fischbein Badillo Wagner Harding*, New York City (*Menachem J. Kastner, Jeffrey A. Mitchell* and *Maureen Bezuhly* of counsel), for appellants.

*Avrom R. Vann*, New York City, for respondent.

**OPINION OF THE COURT**

FRIEDMAN, J.

Defendants Mark L. Bodner and Jesse S. Waldinger are the sole shareholders, directors and officers of a professional corporation named "Bodner & Waldinger, P.C.," which, without dispute, has been in existence at all relevant times. In September 2000, plaintiff landlord (150 Broadway) entered into an office lease signed by Bodner and Waldinger. The lease designates the tenant as "Bodner & Waldinger," without use of the abbreviation "P.C." The signature page of the lease does not indicate whether Bodner and Waldinger signed it in their individual capacities or, alternatively, on behalf of the professional corporation. The lease has a rider, however, which contains two sec-

tions—section 23 ("Corporate Tenant's Representations") and section 39 (a so-called "Good Guy Guaranty" of certain of the tenant's obligations by "the individual[s] executing this lease rider")—that would have meaning only if the professional corporation were the tenant. In pertinent part, sections 23 and 39 of the rider provide as follows:

"Rider Section 23. Corporate Tenant's Representations.

"The persons executing this Lease on behalf of the Tenant hereby jointly and severally represent, warrant and covenant that the Tenant is a duly organized and validly existing corporation under the laws of the State of New York, that all of the Tenant's franchise and corporate taxes have been paid to date, that all future forms, reports, taxes, returns and other documents necessary for the Tenant to comply with all applicable laws will be filed by the Tenant when due, and that the persons executing this Lease on behalf of the Tenant are duly authorized to so do by the board of directors of the Tenant and are further authorized to deliver this Lease on behalf of the Tenant to the Owner."

"Rider Section 39. Good Guy Guaranty.

"In order to induce Owner to enter into this Lease and in consideration of Owner's entering into this Lease, the individual executing this lease rider at the foot hereof (hereinafter, collectively, referred to as 'Guarantor') hereby guaranties, unconditionally and absolutely, to Owner, its successors and assigns . . . , the full and faithful keeping, performance and observance of all the covenants, agreements, terms, provisions and conditions of this lease provided to be kept, performed and observed by Tenant . . . . Guarantor's liability pursuant to this Article (hereinafter sometimes referred to as this 'Guaranty') shall be limited to the performance of those obligations and the payment of such fixed annual rent, additional rent and other charges as accrue up to the date that Tenant vacates the demised premises and removes its property there from [sic], delivers the key to the Owner and gives written notice to Owner that it is surrendering possession of the premises . . . .

"As a further inducement to Owner to enter into this Lease and in consideration thereof, Guarantor represents and warrants that Guarantor is the owner and holder of all the capital stock of Tenant. . . .

"The undersigned Guarantor have [sic] executed this Lease for the purposes set forth in Rider Section hereof [sic]."

Immediately below the last sentence, the signatures of Bodner and Waldinger are again set forth.

For purposes of reporting interest on the security deposit for the leased premises, a Form W-9 was supplied to 150 Broadway that set forth the tax identification number of the professional corporation (identified on the form as "Bodner & Waldinger"). The Form W-9 was signed by Waldinger in his capacity as vice president of the professional corporation. The same taxpayer identification number that appeared on the Form W-9 was used for the tenant (identified as "Bodner & Waldinger") on a real estate tax abatement form signed by both parties that was filed with the New York City Department of Finance in May 2002. The security deposit and all rental payments under the lease were made by checks drawn on the professional corporation's bank account.

Although the lease provided that its term would end on October 31, 2005, it is undisputed that the leased premises were vacated and surrendered to 150 Broadway as of April 30, 2003, as stated in a surrender notice of that date executed on behalf of the professional corporation. It appears to be undisputed that 150 Broadway has been paid all amounts due under the lease through April 30, 2003.

In June 2003, 150 Broadway commenced this action against Bodner and Waldinger, in their individual capacities, seeking damages for the tenant's early surrender of the premises, allegedly in breach of the lease. The complaint does not assert any cause of action under the aforementioned "Good Guy Guaranty" set forth in section 39 of the lease rider (hereinafter, the Guaranty). In lieu of answering, Bodner and Waldinger moved to dismiss the complaint on the ground, among others, that, pursuant to CPLR 3211 (a) (1), documentary evidence established that no cause of action existed against them. Based on sections 23 and 39 of the lease rider, inter alia, defendants argued that the lease established that the tenant thereunder was the professional corporation. Although no claim under the

Guaranty had been asserted, defendants also argued that they were not personally liable under the Guaranty for obligations of the tenant that accrued after the surrender of the premises on April 30, 2003, and that all amounts that had become due on or before that date had been paid. In further support of the motion, defendants submitted copies of the Form W-9 that had been supplied to 150 Broadway, of the security deposit check, and of all rent checks that had been tendered.

In opposition to the motion, 150 Broadway submitted the affidavit of Joseph L. Jerome, the president of the building's managing agent. Attached to Jerome's affidavit were various documents relating to the lease (including the aforementioned real estate tax abatement form) that, like the lease, referred to the tenant as "Bodner & Waldinger." Based on the lease's identification of the tenant as "Bodner & Waldinger," without use of the abbreviation "P.C.," and the signature page's failure to state expressly that Bodner and Waldinger were executing the instrument on behalf of the professional corporation, Jerome argued that "it is clear that the tenant under the Lease is not the Professional Corporation or that at a minimum factual issues exist based upon the documentation submitted by both sides. . . ."[1]

In the order appealed from, the motion court found that the record presented "an issue of fact as to whether the parties intended to establish the corporation's tenancy," and therefore denied the motion to dismiss the action as against Bodner and Waldinger individually. We now reverse.

Dismissal of a complaint pursuant to CPLR 3211 (a) (1) is warranted where "the documentary evidence submitted conclusively establishes a defense to the asserted claims as a matter of law" (*Leon v Martinez*, 84 NY2d 83, 88 [1994]). In particular, where a written agreement (such as the lease in this case) unambiguously contradicts the allegations supporting a litigant's cause of action for breach of contract, the contract itself constitutes documentary evidence warranting the dismissal of the complaint pursuant to CPLR 3211 (a) (1), regardless of any extrinsic evidence or self-serving allegations offered by the proponent of the claim (*see Excel Graphics Tech. v CFG/ AGSCB 75 Ninth Ave.*, 1 AD3d 65, 69 [2003], *lv dismissed* 2

---

1. In addition to opposing the motion to dismiss, 150 Broadway cross-moved to file and serve a supplemental summons and amended complaint naming the professional corporation as an additional defendant. The motion court granted the cross motion, and that ruling is not at issue on this appeal.

NY3d 794 [2004]). This follows from the bedrock principle that it is a court's task to enforce a clear and complete written agreement according to the plain meaning of its terms, without looking to extrinsic evidence to create ambiguities not present on the face of the document (*see e.g. Vermont Teddy Bear Co. v 538 Madison Realty Co.*, 1 NY3d 470, 475 [2004]; *Greenfield v Philles Records*, 98 NY2d 562, 569 [2002]; *R/S Assoc. v New York Job Dev. Auth.*, 98 NY2d 29, 32, 33 [2002]; *Reiss v Financial Performance Corp.*, 97 NY2d 195, 198, 199 [2001]). This rule has "special import 'in the context of real property transactions, where commercial certainty is a paramount concern, and where . . . the instrument was negotiated between sophisticated, counseled business people negotiating at arm's length' " (*Vermont Teddy Bear Co. v 538 Madison Realty Co., supra* at 475, quoting *Matter of Wallace v 600 Partners Co.*, 86 NY2d 543, 548 [1995]).

In this case, the terms of the subject lease establish, as a matter of law, that the tenant thereunder was the professional corporation formed by Bodner and Waldinger, not Bodner and Waldinger individually. It is a cardinal rule of contract construction that a court should "avoid an interpretation that would leave contractual clauses meaningless" (*Two Guys from Harrison-N.Y. v S.F.R. Realty Assoc.*, 63 NY2d 396, 403 [1984]). Stated otherwise, "[c]ourts 'are obliged to interpret a contract so as to give meaning to all of its terms' " (*Excel Graphics Tech. v CFG/AGSCB 75 Ninth Ave., supra* at 69, quoting *Mionis v Bank Julius Baer & Co.*, 301 AD2d 104, 109 [2002]).[2] To construe the lease before us as an agreement between 150 Broadway and the individual defendants would violate this rule by depriving the lease rider's section 23 ("Corporate Tenant's Representations") and section 39 (the Guaranty) of any force or effect. Plainly, each of these provisions has meaning only if the tenant under the lease is a corporation. We therefore conclude that the lease's designation of "Bodner & Waldinger" as the tenant refers, notwithstanding the omission of the abbreviation

---

2. *See also Matter of Bombay Realty Corp. v Magna Carta*, 100 NY2d 124, 127 (2003) ("One portion of the lease should not be read so as to negate another portion"); *350 E. 30th Parking v Board of Mgrs. of 350 Condominium*, 280 AD2d 284, 287 (2001) ("a contract as a whole should not be interpreted in a way that would leave one of its provisions without force or effect"); *Helmsley-Spear, Inc. v New York Blood Ctr.*, 257 AD2d 64, 69 (1999) ("Courts should construe a contract so as to give meaning to all of its language and avoid an interpretation that effectively renders meaningless a part of the contract").

"P.C.," to the professional corporation whose official name is "Bodner & Waldinger, P.C."

The fact that the lease's signature page does not contain an express indication that Bodner and Waldinger signed the instrument on behalf of the professional corporation, rather than in their individual capacities, does not require a different result. The signatures on the lease must be read, like any other portion of the instrument, not in isolation, but in the context of the instrument as a whole (*see Zodiac Enters. v American Broadcasting Cos.*, 81 AD2d 337 [1981], *affd* 56 NY2d 738 [1982]). Again, when the lease is read as a whole, it is clear that the intended tenant was the professional corporation.

Our decision in *PNC Capital Recovery v Mechanical Parking Sys.* (283 AD2d 268 [2001], *lv dismissed* 96 NY2d 937 [2001], *appeal dismissed* 98 NY2d 763 [2002]) illustrates the principle that the presence or absence of a reference to corporate office above or below a person's signature on an instrument does not necessarily determine the capacity in which the person signed the instrument. In *PNC*, a creditor of a corporation sued the corporation's president (Kadosh), individually, on a guaranty of the corporation's debt that Kadosh had signed. Kadosh argued that the presence of the word "president" immediately below the line for his signature on the guaranty established that he was not personally liable under the guaranty because he had signed it in his capacity as corporate president. We unanimously held this argument to be untenable as a matter of law when the guaranty was read as a whole and in the context of the entire transaction, and therefore granted the creditor summary judgment on its claim against Kadosh under the guaranty. Of particular relevance here, we stated:

> "Further, an interpretation that Kadosh signed the Guaranty solely in his capacity as president of the corporation [Mechanical] would compel the illogical conclusion that the purpose of the Guaranty was to provide that in case of Mechanical's default, the company would guaranty its own indebtedness, rendering the entire Guaranty meaningless" (283 AD2d at 270-271 [citing, inter alia, *Two Guys from Harrison-N.Y. v S.F.R. Realty Assoc., supra*]).

The logic of *PNC Capital* applies in this case, albeit in reverse. In *PNC Capital,* Kadosh could not avoid his personal liability under the guaranty by pointing to the presence of the word "president" under his signature, where the guaranty

otherwise established that he had signed it as an individual. In this case, by parity of reasoning, 150 Broadway cannot have recourse against Bodner and Waldinger under the lease by pointing to the absence of a reference to Bodner's and Waldinger's status as corporate agents adjacent to their signatures on the lease, where the lease otherwise establishes that they signed on behalf of their professional corporation. In each case, an interpretation of an instrument that would result in making a person or entity the guarantor of his, her or its own debt must be rejected.

150 Broadway argues that sections 23 and 39 of the lease rider should be disregarded because, according to Jerome's affidavit, the lease "is a standard form of lease which is uniformly used [by 150 Broadway] for every prospective tenant," whether or not the tenant is a corporation. This argument is unavailing. Aside from the rule that the lease is to be construed against 150 Broadway as the party that admittedly prepared it (*see Jacobson v Sassower*, 66 NY2d 991 [1985]), the fact is that Bodner and Waldinger signed both the lease and, separately, the Guaranty at the end of the rider to the lease. Obviously, if Bodner and Waldinger signed the lease itself in their individual capacities, it would have been a meaningless act for them to separately affix their signatures to a provision guaranteeing their own personal indebtedness. Even if the printed text of the Guaranty could be considered boilerplate, the signatures that follow it cannot be regarded as nugatory. The only possible interpretation of these signatures is that Bodner and Waldinger specifically assented to the Guaranty, for the benefit of 150 Broadway. Accordingly, 150 Broadway's rights against Bodner and Waldinger individually are limited to the rights afforded to it by the Guaranty.

For the foregoing reasons, we find that the lease, by itself, establishes that Bodner and Waldinger are entitled to dismissal of the complaint as against them pursuant to CPLR 3211 (a) (1). We further observe that, even if the terms of the lease were not dispositive, we would deem it appropriate to grant Bodner and Waldinger summary judgment, pursuant to CPLR 3211 (c), based on the other evidence both sides submitted to the motion court. In particular, the Form W-9 that was furnished to 150 Broadway at the inception of the lease—which plainly sets forth a corporate tax identification number—is completely inconsistent with 150 Broadway's present contention that it intended to enter into a landlord-tenant relationship with Bodner and

Waldinger as individuals. We also note that, contrary to 150 Broadway's contention, the extrinsic documents referring to the tenant as "Bodner & Waldinger," rather than "Bodner & Waldinger, P.C.," offer no support to the view that the individual defendants were the tenants. The question in this case is whether the term "Bodner & Waldinger" in the lease refers to the professional corporation or to its shareholders as individuals. To the extent the other documents would be of any assistance in answering this question, they appear to support the view that the terms "Bodner & Waldinger" and "Bodner & Waldinger, P.C." were used interchangeably to refer to the corporation.[3]

Finally, in its brief opposing this appeal, 150 Broadway argues that, even if the corporation is the tenant under the lease, the Guaranty makes Bodner and Waldinger liable for certain of the landlord's postsurrender expenses, namely, the costs and expenses incurred by the landlord in enforcing the lease against the tenant. We do not address this issue, since no claim under the Guaranty is before us on this appeal. Neither the original complaint nor the amended complaint asserts any cause of action under the Guaranty. Moreover, in his affidavit submitted on behalf of 150 Broadway, Jerome specifically stated that "[t]his [a]ction was not brought nor is it being maintained under the good guy guarantee [sic]." If 150 Broadway now believes that it has potentially viable claims against Bodner and Waldinger individually under the Guaranty, it may, if so advised, seek leave from Supreme Court to further amend its complaint to assert such claims. We express no opinion on whether an application for such leave should be granted.

Accordingly, the order of the Supreme Court, New York County (Saralee Evans, J.), entered January 5, 2004, which, insofar as appealed from, as limited by the briefs, denied defendants' motion to dismiss the verified complaint, should be reversed, on the law, without costs, and the motion granted.

---

**3.** The motion court, in denying the motion to dismiss, relied in part on Business Corporation Law § 1512 (b), which provides that the "corporate name [of a professional service corporation] shall end with the words 'Professional Corporation' or the abbreviation 'P.C.' " This provision, however, refers to the required form of the official name of a professional service corporation, and does not require that such a corporation be referred to by its full official name in each of its agreements.

Tom, J.P., Saxe, Williams and Marlow, JJ., concur.

Order, Supreme Court, New York County, entered January 5, 2004, reversed, on the law, without costs, and defendants' motion to dismiss the verified complaint granted.