D'Artagnan, LLC v Sprinklr Inc. (2021 NY Slip Op 01479)





D'Artagnan, LLC v Sprinklr Inc.


2021 NY Slip Op 01479


Decided on March 11, 2021


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: March 11, 2021

Before: Webber, J.P., Kern, Scarpulla, Mendez, JJ. 


Index No. 653259/18 Appeal No. 13332 Case No. 2019-04312 

[*1]D'Artagnan, LLC, Plaintiff-Appellant,
v
Sprinklr Inc., Defendant-Respondent.


Hellring Lindeman Goldstein & Siegal LLP, New York (Stephen L. Dreyfuss of counsel), for appellant.
Lowenstein Sandler LLP, New York (Gavin Rooney of counsel), for respondent.



Order, Supreme Court, New York County (Melissa A. Crane, J.), entered on or about October 11, 2019, which granted defendant's motion to dismiss the complaint pursuant to CPLR 3211(a)(1) and (7), unanimously affirmed, without costs.
Plaintiff is a New Jersey limited liability company with its principal place of business in that state. It bills itself as "a leading purveyor of meats, foie gras, . . . mushrooms, organic game and poultry."
In early 2017, plaintiff was introduced to defendant, which according to plaintiff "held itself out . . . as having special expertise to . . . enable plaintiff to expand its marketing on social media." According to plaintiff, it "repeatedly emphasized to defendant that it wanted a tool that would enable it to perform direct targeting through social media channels, particularly Facebook and Instagram." Defendant allegedly "represented that the . . . program [it would license to plaintiff] could enable [it] to. . . directly market to specific customers on a one-to-one . . . basis."
On or about June 2, 2017, the parties entered into a license, a master services agreement, and a statement of work (SOW) (collectively, the Contract). The Contract is silent regarding direct targeting. The master services agreement contains a general merger clause which provides, "This Agreement together with each Order Form and/or SOW is the entire agreement between the parties relating to this subject matter, and supersedes . . . all prior or contemporaneous understandings of the parties related thereto." The master services agreement also contains a no representation clause which provides, "No party has been induced to enter into this Agreement by, nor is any party relying on, any representation or warranty outside those expressly stated in this Agreement." Following payment by plaintiff but prior to use of defendant's services or platform, plaintiff allegedly discovered for the first time that it could not target potential customers individually and directly through certain social media channels. Plaintiff then commenced this action.
The first cause of action calls "for a declaration that no agreement was entered into between [the parties] because there was no meeting of the minds as to the material terms of the agreement." The second cause of action for fraud, alleges that defendant "misrepresented the capabilities of its platform and failed to disclose its limitations." The third cause of action alleges a violation of the New Jersey Consumer Fraud Act. The fourth cause of action is for negligent misrepresentation. The fifth cause of action is for breach of contract, alleging that defendant's "failure to provide plaintiff with the ability to target specific customers and direct advertisements to these particular customers on Facebook and Instagram constitutes a breach of the contract." It does not identify any specific provision that defendant breached. The sixth cause of action is for unjust enrichment.
Plaintiff's cause of [*2]action for declaratory judgment/rescission was correctly dismissed. A contract "is unenforceable if there is no meeting of the minds, i.e., if the parties understand the contract's material terms differently" (Gessin Elec. Contrs., Inc. v 95 Wall Assoc., LLC, 74 AD3d 516, 518 [1st Dept 2010]). There must be "a reasonable basis for the parties' difference of opinion as to what the contract included or did not include . . . for lack of a meeting of the minds regarding a material element" (id. at 519). Put another way, the material terms must be "so obscure and ambiguous that it is impossible to ascertain with any reasonable degree of certainty the intention of the parties" (Brands v Urban, 182 AD2d 287, 289 [2d Dept 1992]). Plaintiff does not identify any material terms in the contract that the parties understand differently and does not allege any ambiguity in the contract. Instead, plaintiff's allegation that there was no meeting of the minds with respect to a material element of the parties' agreement is a bare legal conclusion that is insufficient to defeat a motion to dismiss (see Mark Hampton, Inc. v Bergreen, 173 AD2d 220 [1st Dept 1991], lv denied 80 NY2d 788 [1992]).
Plaintiff's second, third and fourth causes of action were also correctly dismissed. In addition to a general merger clause, the parties' contract contains a "'No Additional Representation' clause that disclaims liability and responsibility for any extra-contractual representation" (WT Holdings Inc. v Argonaut Group, Inc. , 127 AD3d 544, 544 [1st Dept 2015]; see Natoli v NYC Partnership Hous. Dev. Fund Co., Inc., 103 AD3d 611, 613 [2d Dept 2013]). In section 10.8 of the master services agreement, plaintiff specifically agreed that it had not been "induced to enter into [the master services agreement] . . . nor is [plaintiff] relying on, and representation or warranty outside those expressly stated in [the master service agreement]." In light of this specific agreement, plaintiff's claims sounding in fraud and negligent misrepresentation based upon parol evidence contained in the parties' emails are not viable.
We find that the court properly dismissed plaintiff's breach of contract claim. That claim alleges that defendant's failure to provide plaintiff with the ability to target specific customers and to direct advertisements to these customers on Facebook and Instagram breached the contract. However, nowhere in the contract does it requires defendant to give plaintiff this ability (see 150 Broadway N.Y. Assoc., L.P. v Bodner, 14 AD3d 1, 5 [1st Dept 2004]).
Plaintiff's unjust enrichment claim should also be dismissed "because there is a valid and enforceable operating agreement governing the subject matter of those claims" (Stang LLC v Hudson Sq. Hotel, LLC, 158 AD3d 446, 446 [1st Dept 2018]).
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: March 11, 2021