■ AGIP PETROLEUM CO., INC., Respondent, v 666 FIFTH AVENUE LIMITED PARTNERSHIP et al., Appellants. [746 NYS2d 717]

Defendants 666 Fifth Avenue Limited Partnership and 666 Fifth, L.P. are the former owner and current owner, respectively, of the building known as 666 Fifth Avenue in the Borough of Manhattan. Plaintiff is the tenant of part of the fifth floor, having entered into a lease dated September 11, 1979, amended March 3, 1993, which provided for the payment of a base annual rental plus certain rent escalation charges. Pursuant to paragraph 28 of the lease, the fixed rent was increased or decreased "resulting from increase or decrease in real estate taxes, operating expenses, wage rates," as set forth in the rent escalation rider that provided that the base annual rental rate would be increased or decreased in any given year by plaintiff's proportionate share of the increase or decrease in operating expenses and real estate taxes for the building as against the lease year from July 1, 1993 to June 30, 1994. Operating expenses include various expenses incurred in the operation, maintenance and management of the building but do not include real estate taxes.

With respect to real estate taxes, section B (1) of the rider provides, inter alia, "If the Taxes payable for any Tax Year * * * shall represent an increase above or decrease below the Base Taxes, then the Base Annual Rental Rate for such Tax Year * * * shall be increased or decreased, as the case may be, by the Tenant's Proportionate Percentage of the increase or decrease." Similarly, with respect to operating expenses, section B (2) provides, inter alia, "If the Operating Expenses for any calendar year * * * subsequent to the Base Expense Year shall be greater or less than the Base Operating Expenses, then the Base Annual Rental Rate payable under this lease for such calendar year * * * shall be increased or decreased, as the case may be, by the Tenant's Proportionate Percentage of the increase or decrease." These provisions are qualified by section E (3), which provides that, notwithstanding any provision in section B, "under no circumstances shall the rental payable under this lease be at a rate less than the Base Annual Rental Rate." Section C (1) requires the landlord to send the tenant "a comparative statement(s) showing separately or together: (i) a comparison of the Taxes for the Comparison Year with the Base Taxes, (ii) a comparison of the Operating Expenses for the comparison year with the Base Operating Expenses, and (iii) the amount of the increase or decrease in the Base Annual Rental Rate resulting from each of such comparisons." Section E (2) provides that all comparative statements are binding unless the tenant sends the landlord a written objection within 60 days specifying the aspects of the statements claimed to be incorrect. Section E (1) provides that if the assessed valuation used in computing the taxes for the comparison year is reduced after the comparison statement is sent to the tenant and the landlord receives a tax refund the landlord must send the tenant a statement adjusting the taxes for said comparison year and setting forth the tenant's proportionate share of the refund, and the tenant would be entitled to receive such percentage as a credit against the next rent, "provided, however, that Tenant's share of such refund shall be limited to the amount, if any, which Tenant had theretofore paid to Landlord as increased rent for such Comparison Year on the basis of the assessed valuation before it had been reduced."

During the first 20 years of the lease, plaintiff did not make any objections. In September 1999, however, plaintiff claimed that the operating expense escalation charges should be reduced by the proportionate share of the annual decrease in real estate taxes whenever current real estate taxes fell below the base tax. Based on this claim, plaintiff's proportionate

share of the annual decrease in real estate taxes exceeded its proportionate share of the annual increase in operating expenses. According to its computation, plaintiff claimed that it was owed $71,875.38 for the tax years 1994/1995 through 1998/1999, and estimated a potential future savings through the lease expiration date of September 30, 2007 of an amount in excess of $100,000. Plaintiff also claimed that defendants failed to furnish it with correctly prepared comparative tax statements for 1994/1995 and subsequent tax years that would have shown assessment and real estate tax reductions on the building entitling the tenant to refunds or credits with respect to its proportionate share of the tax reduction. Plaintiff calculated the amount due for the tax years 1994/1995 through 1999/2000 at $97,959.10.

Plaintiff commenced this action seeking damages for breach of contract and declaratory relief, moving, after joinder of issue, for summary judgment on the alleged overcharges. Defendants cross-moved to dismiss the complaint on the grounds, inter alia, that the claims were time-barred, that the lease terms were unambiguous and refuted the claims of overcharge and that the parties' course of conduct belied the complaint's allegations. The court granted the motion and denied the cross motion, finding, inter alia, that sections B (1) and B (2) of the lease rider required that decreases in real estate taxes below base taxes were to be used to offset increases in operating expenses over the base year. Judgment was thereafter entered in the amount of $110,697.05 on the first cause of action. We reverse and dismiss the complaint.

On this record, we are unable to resolve conclusively whether defendants provided plaintiff with comparative tax statements for most of the tax years. Had such statements been provided, as claimed by defendants but denied by plaintiff, plaintiff, which under the lease has only 60 days to contest each statement, would now be time-barred from challenging all but the latest statement, received after plaintiff had made the objections described. Interpretation of an unambiguous contract is the responsibility of the court, without resort to extrinsic evidence. (*Chimart Assoc. v Paul*, 66 NY2d 570, 572-573.) A contract, clear and complete on its face, should be enforced as written. (*See, W.W.W. Assoc. v Giancontieri*, 77 NY2d 157, 162.) Sections B (1) and B (2) govern the escalation charges, each separately providing that a tax increase or decrease and operating expense increase or decrease will affect the base rent. Neither section, however, provides that any increase or decrease in the particular item, be it tax or operating expense, will have

an effect on the other as an escalation claim. Its effect is only on the base rent. The definition of base rent specifically excludes tax escalations and operating expense escalations.

Moreover, section C (1) provides that the landlord send to the tenant "separately or together" the comparison statements. Section C (1) shows that the parties intended to treat tax escalation charges and operating expense charges separately, demonstrating how each charge, tax and operating expenses, separately caused an increase or decrease in the base rent. Additionally, section E (1) provides for the refund of taxes, through a credit for the tenant against the next rent, but makes no reference to a credit against operating expenses, as plaintiff argues. Nothing in the lease supports the motion court's interpretation that the annual increase in the base annual rent attributable to the increase in operating expenses should be offset by the tenant's proportionate share of the annual decrease in real estate taxes. The provisions respecting increase or decrease in taxes and operating expenses are separately written and operate independently.

The motion court's decision does not even mention sections C (1) or E (1) of the rent escalation rider. Rather, the motion court based its ruling on sections B (1) and B (2), which provide that the base rent shall be increased or decreased, as the case may be, by increases or decreases to real estate tax escalation charges and/or operating expense escalation charges. These provisions, however, are limited by section E (3) of the rent escalation rider, which, with respect to section B, provides, as noted, "[U]nder no circumstances shall the rental payable under this lease be at a rate less than the Base Annual Rental Rate." Thus, section E (3) provides that when current taxes fall below the base tax plaintiff will not pay a tax escalation charge, but the base rent will not be affected; similarly, when the current year operating expenses fall below base operating expenses plaintiff will not pay an operating expense escalation charge, but the base rent will not be affected.

Since plaintiff's entire claim is premised on the argument that tax escalation refunds should be credited to operating expense increases, which we reject, the complaint should be dismissed. Concur—Tom, J.P., Sullivan, Rosenberger and Friedman, JJ.