■ EISEMAN LEVINE LEHRHAUPT & KAKOYIANNIS, P.C., Appellant, v TORINO JEWELERS, LTD., et al., Respondents. [844 NYS2d 242]—

Order, Supreme Court, New York County (Carol Edmead, J.), entered May 19, 2006, which, granted defendants' motion to stay the action pending arbitration, reversed, on the law, with costs, the motion denied, and the matter remanded for further proceedings.

On April 8, 2005, plaintiff Eiseman Levine Lehrhaupt & Kakoyiannis, P.C. (ELLK) was retained by defendants, Torino Jewelers, Ltd., Gili Vaturi, Tiran Sinai, and Nirit Sinai, to represent them as defendants in a lawsuit in the United States District Court in the Southern District of New York. The retainer agreement provided for an initial payment of $25,000 and monthly payments "anticipated" in the aggregate, not to exceed $60,000, for preliminary representation and the preparation and filing of a motion to dismiss the complaint. The retainer agreement also provided: "Please be advised that, should a fee or cost dispute arise between us concerning an amount between $1,000 and $50,000, you may select to resolve the dispute through arbitration proceedings in New York City in accordance with 22 NYCRR 137. New York law will govern the dispute." On May 27, 2005, ELLK filed a motion to dismiss the complaint in the federal action on defendants' behalf. The federal complaint was amended and ELLK drafted and served a second motion to dismiss. On March 22, 2006, the federal court dismissed that action as against defendant Torino Jewelers, but not as against the other defendants.

Also on March 22, 2006, ELLK met with defendants to discuss their continued representation. The parties agree that as of that date, defendants owed ELLK $49,424.80 in legal fees. However, they sharply dispute what happened at the meeting. Defendants

contend that they instructed ELLK to stop working on their case. ELLK denies that it was instructed to stop its work, and on March 23, 2006, ELLK, by Eric Levine Esq., faxed a letter to defendants setting forth proposed fees for discovery, the next phase of the federal litigation. The final sentence of the letter states: "Please acknowledge your acceptance of these terms by signing below and returning a signed copy to me." Gili Vaturi, the defendant to whom the letter was sent, did not sign or return the letter.

On March 31, 2006, ELLK wrote to the district court judge to request a 30-day extension for defendants to file their answer. In that letter Mr. Levine stated:

"Yesterday morning I was informed by my clients that I was to cease immediately doing any further work on the matter. They informed me that they had decided to retain new counsel . . . . Knowing that an answer to the complaint was due early next week, I immediately contacted my adversary, Donald Kravet, and left him a voice mail message in which I asked for his consent to adjourn our time to answer by thirty days to allow my clients the time to retain new counsel, and to afford the new counsel time to sufficiently familiarize himself with the case. As you can see from his attached response, he declined.

"Yesterday afternoon . . . I received a telephone call from a Ryan Goldstein who identified himself to me as the defendants' new counsel . . . Mr. Goldstein told me . . . that he would be responsible for filing and serving the answer, he would contact Mr. Kravet directly, and that he would provide me with a substitution of counsel. As of this morning I have not received a substitution of counsel form . . . respectfully request that the Court grant a thirty day extension in which to file an answer." The district court gave defendants until April 21, 2006 to file the answer in that action.

On March 31, 2006, ELLK faxed defendants an invoice for $60,404.60. This included the $49,424.80 which had been incurred in March prior to the meeting on the 22nd, and $10,979.80 for legal services provided between March 22 and March 29, 2006. A three page, itemized breakdown of the services provided to substantiate the $10,979.80 in fees was attached to the invoice. Defendants made no payment.

ELLK then commenced this action. In lieu of filing an answer, defendants moved for a stay of the action and an order compelling the parties to proceed to arbitration. The court granted defendants' motion, stating that arbitration is strongly favored in this state (*Matter of Nationwide Gen. Ins. Co. v Investors Ins. Co. of Am.*, 37 NY2d 91 [1975]), and that the dispute came

within the scope of the subject arbitration agreement (*Matter of Smith Barney Shearson v Sacharow*, 91 NY2d 39, 49-50 [1997]). Plaintiff unsuccessfully moved for reargument, which was summarily denied. This appeal ensued.

The law is settled that whether a controversy is properly subject to arbitration is initially one for the courts to determine (*see Matter of Primex Intl. Corp. v Wal-Mart Stores*, 89 NY2d 594, 598 [1997]). The proponent of arbitration has the burden of demonstrating that the parties agreed to arbitrate the dispute at issue (*Gerling Global Reins. Corp. v Home Ins. Co.*, 302 AD2d 118, 123 [2002], *lv denied* 99 NY2d 511 [2003]). An arbitration clause, as a component of a contractual agreement, must be enforced according to its terms (*see Greenfield v Philles Records*, 98 NY2d 562, 569 [2002]; *W.W.W. Assoc. v Giancontieri*, 77 NY2d 157, 162 [1990]). Moreover, "a court will not order a party to submit to arbitration absent evidence of that party's unequivocal intent to arbitrate the relevant dispute and unless the dispute falls clearly within that class of claims which the parties agreed to refer to arbitration" (*Primavera Labs. v Avon Prods.*, 297 AD2d 505, 505 [2002] [citations and internal quotation marks omitted]).

Here the parties agreed to arbitrate disputes between $1,000 and $50,000 consistent with New York's "Fee Dispute Resolution Program," codified at Rules of the Chief Administrator of the Courts (22 NYCRR) part 137. The State's Rules specifically provide that they do not apply where the amount in controversy is "more than $50,000," unless the parties consent to arbitration (22 NYCRR 137.1 [b] [2]). Although it is defendants' contention that the amount in controversy here is $49,424.80, this is not an uncontroverted fact. In fact, it is ELLK's position that $60,404.60 is at issue, as previously billed, and they do not consent to arbitration. In the absence of a claim of overreaching or overbearing, the retainer agreement executed by the parties should be enforced as written (*see Ermiger v Black*, 36 AD3d 1053, 1054 [2007]; *Agip Petroleum Co. v 666 Fifth Ave. Ltd. Partnership*, 297 AD2d 483, 485 [2002], *lv denied* 99 NY2d 504 [2002]; *see Matter of Woolfson*, 158 Misc 928, 931 [1936]). Thus, arbitration pursuant to part 137 of the Rules of the Chief Administrator of the Courts cannot be compelled (*Borovina & Marullo, PLLC v Structured Assets Sales Group, LLC*, 17 AD3d 387 [2005]). Accordingly, we reverse the order appealed and deny defendants' motion. Concur—Mazzarelli J.P., Andrias, Sullivan and Nardelli, JJ.

McGuire, J., dissents in a memorandum as follows: The arbitration provision in the retainer agreement between the

parties sheds little light on how to resolve the arbitrability dispute that is central to this appeal. Nonetheless, we must resolve it and do so in accordance with principles of contract interpretation. Because that provision reflects and refers to an arbitration provision that is mandated by law, it also is appropriate to consider the public policy considerations that inform both arbitration generally and the attorney-client relationship. I respectfully dissent because I believe the majority's resolution of the arbitrability dispute is not consistent with principles of contract interpretation or public policy considerations.

In April 2005 defendants Torino Jewelers, Ltd., Gili Vaturi, Tiran Sinai and Nirit Sinai (the Torino defendants) retained plaintiff Eiseman Levine Lehrhaupt & Kakoyiannis, P.C. (ELLK) to represent the Torino defendants in a civil action commenced against them in federal court. The Torino defendants signed a retainer letter prepared by ELLK in which it was agreed "that, should a fee or cost dispute arise between us concerning an amount between $1,000 and $50,000, you [i.e., the clients] may select to resolve the dispute through arbitration proceedings in New York City in accordance with 22 NYCRR 137. New York law will govern the dispute."

Part 137 of the Rules of the Chief Administrator of the Courts "establishes the New York State Fee Dispute Resolution Program [the Program], which provides for the informal and expeditious resolution of fee disputes between attorneys and clients through arbitration and mediation. In accordance with the procedures for arbitration, arbitrators shall determine the reasonableness of fees for professional services" (22 NYCRR 137.0). The Program "appl[ies] where representation . . . commenced on or after January 1, 2002, to all attorneys admitted to the bar of the State of New York who undertake to represent a client in any civil matter" (22 NYCRR 137.1 [a]). It does not apply, however, to "amounts in dispute involving a sum of less than $1,000 or more than $50,000" (22 NYCRR 137.1 [b] [2]), unless the parties agree otherwise. If the dispute is subject to the Program, arbitration is mandatory for an attorney if requested by the client (22 NYCRR 137.2 [a]).

Arbitration awards under the Program are not necessarily or automatically binding upon the parties. Rather "[*d*]*e novo* review" is available to either party as of right (22 NYCRR 137.8). Thus, "[a] party aggrieved by the arbitration award may commence an action on the merits of the fee dispute in a court of competent jurisdiction within 30 days after the arbitration award has been mailed" (22 NYCRR 137.8 [a]). If no such ac-

tion is commenced, "the award shall become final and binding" (*id.*). If such an action is commenced, "the arbitration award [shall not] be admitted in evidence at the trial *de novo*" (22 NYCRR 137.8 [c]). In an apparent effort to summarize these provisions, the arbitration provisions of the retainer agreement advises the Torino defendants that "if you select arbitration, the arbitration result will be final and binding unless *de novo* review is sought as provided in 22 NYCRR 137.2 [*sic*]."[1]

On March 22, 2006, following ELLK's receipt of a decision of the federal court granting in part and denying in part the Torino defendants' motion to dismiss the amended complaint in the federal action, ELLK and the Torino defendants met at the offices of ELLK. The parties offer very different accounts of what occurred at this meeting. The Torino defendants insist they instructed ELLK to stop working on the federal action because they believed the bills ELLK submitted for the work it performed were excessive. In particular, defendant Vaturi, one of the participants in the March 22 meeting, submitted an affidavit in which she swore that "the parties met to discuss the ongoing dispute regarding the excessive bills submitted by [ELLK]" and that "[ELLK] was directed to stop any further work until such time and [*sic*] the defendants contacted [it]."

ELLK, on the other hand, maintains that the parties discussed the court's decision and how to proceed, and that the Torino defendants "wanted to use ELLK and wanted [ELLK] to continue to defend them in the [federal action]." ELLK also maintains that it agreed both to cap the cost of the next phase of the federal action, i.e., discovery, at $125,000 and to a schedule pursuant to which the Torino defendants would pay the fees charged by ELLK. The billing records of ELLK indicate that the Torino defendants owed ELLK $49,424.80 as of the March 22, 2006 meeting.

The following day ELLK faxed to the Torino defendants a letter requesting that they confirm that ELLK would continue to represent them in the federal action and that the fee arrangement was acceptable. The letter concluded with a request that the Torino defendants acknowledge their acceptance of the new terms by signing and returning the letter. The letter was never returned, signed or otherwise, by the Torino defendants to ELLK.

---

1. The correct reference should be to 22 NYCRR 137.8, not 22 NYCRR 137.2. In relevant part, the latter section specifies that "[t]he attorney and client may consent in advance to arbitration pursuant to this Part that is final and binding upon the parties and not subject to *de novo* review" (22 NYCRR 137.2 [c]).

The Torino defendants assert that on March 27 they discharged ELLK "due to [its] ongoing submission of what [the Torino defendants] believed to be excessive billing." ELLK maintains that on March 24 one of the Torino defendants confirmed that the letter had been received and that, pursuant to the proposed fee arrangement, a payment of $15,000 would be made to ELLK by March 27. No such payment was made and, according to ELLK, the Torino defendants discharged ELLK on March 30. By an invoice dated March 31, ELLK billed the Torino defendants $10,979.80 for the work the firm had performed from March 22 to 29 and stated that the Torino defendants' total outstanding balance was $60,404.60.

On April 21, 2006, ELLK commenced this action against the Torino defendants seeking to recover the $60,404.60 balance. The Torino defendants moved to stay this action and compel arbitration of ELLK's claim. The Torino defendants argued that, as of March 22—the date they assert ELLK was told to stop working on the federal action—they owed ELLK at most $49,424.80 and therefore the fee dispute was subject to arbitration pursuant to the retainer and 22 NYCRR part 137. ELLK opposed the motion, arguing that the amount in dispute exceeded $50,000 and therefore was not subject to arbitration. Supreme Court granted the motion, stayed the action and compelled the parties to arbitrate.

The dispute on this appeal over the arbitrability of the underlying fee dispute or disputes turns on a pure question of historical fact: what happened during the March 22 meeting. The parties do not dispute that as of that day the most the Torino defendants owed ELLK is just over $49,000, i.e., "an amount between $1,000 and $50,000." ELLK does not contend that it would have a claim for $50,000 or more if it was instructed to stop working on March 22. Thus, if the Torino defendants instructed ELLK to stop working that day, the Torino defendants would be entitled to the informal and expeditious, but not necessarily binding, dispute resolution procedures of the Program; if the Torino defendants did not so instruct ELLK, ELLK would be entitled to go straight to court to have the fee dispute resolved by litigation.[2] Obviously, there are only two possibilities: the Torino defendants are correct and they did

---

**2.** From the submissions of the Torino defendants in support of their motion to compel arbitration it is not clear whether they contend that they owe no part of the amount allegedly due as of March 22. An independent basis for compelling arbitration might exist, however, if the Torino defendants had conceded that of the $49,424.80 allegedly due as of March 22 they owed an amount equal or greater than $10,405 (the amount by which the claimed bal-

so instruct ELLK, or ELLK is correct and the firm was not so instructed.

Understandably, the majority does not purport to choose between these two possibilities. After all, on the existing record there is no basis for doing so. Nonetheless, the majority rules that the Torino defendants are not entitled to arbitration. The sole justification the majority offers is that the contention by the Torino defendants that the amount in controversy is less than $50,000 (i.e., their contention that ELLK was instructed to stop working on March 22) "is not an uncontroverted fact." The majority does not otherwise explain its position, but it presumably would defend along the following lines: there is a dispute about what was said on March 22, and which of the parties is correct about what was said is irrelevant to the issue of whether there is a dispute. What is relevant is that the parties do not agree about what was said and, as a result, the total of the amounts in dispute exceeds $50,000.

If that is the majority's reasoning, I have no quarrel with it as a matter of logic. Nonetheless, the majority's ultimate conclusion—that the Torino defendants' factual assertions about what was said on March 22 are irrelevant to their arbitration rights—is not required by the language of the arbitration provision. In my judgment, the majority's conclusion is erroneous as a matter of contract interpretation.

As noted, nothing in the arbitration provision of the retainer letter (or, for that matter, in part 137) addressees the question of how to determine whether the amount of "a fee or cost dispute" exceeds $50,000. And as this case shows, Professor Siegel was correct when, after raising precisely this question about the Program, he observed that "trouble can arise" in determining whether the amount in dispute exceeds $50,000 (118 Siegel's Practice Review, *Rule 137 on Mandatory Arbitration of Attorney's Fee Disputes Takes Effect January 1, 2002, and Applies in All [Not Just Matrimonial] Actions*, at 1 [Jan. 2002]). One source of trouble is that "[i]t is quite possible for the lawyer to inflate what is really a below-$50,000 claim just to escape the arbitration requirement. The cure for that is not clear" (*id.*).

I do not mean to suggest that ELLK has knowingly and falsely denied that it was instructed to stop working on March 22 in an attempt to escape the arbitration requirement. Unfortunately, however, there are unscrupulous lawyers and such a lawyer

---

ance due exceeds $50,000). In that event, the amount in dispute would be less than $50,000 even if ELLK was not instructed to stop working on March 22.

might make false statements or inflate a bill to avoid arbitration and place greater pressure on the client. All lawyers, moreover, can make mistakes. The majority's approach strikes me as unsatisfactory because it is heedless of both the reality that such improper conduct can occur and the possibility that in any given fee dispute the lawyer may be mistaken about a factual matter that is decisive of the client's valuable arbitration rights. In another case, for example, whether the amount in dispute exceeds $50,000 might turn on whether the attorney was authorized by the client to draft a contract or research an issue. Under the majority's approach, it would not matter if it were to turn out that due perhaps to some law office failure the attorney was not so authorized. Rather, the lawyer's mistaken insistence otherwise in opposing a motion to compel arbitration will be sufficient to deprive the client of the benefits the Program was designed to confer (*see* Hon. Jonathan Lippman, *Welcome Fee Dispute Arbitration Program*, NYLJ, Jan. 22, 2001, at S1, col 5). Moreover, the extent of the factual support the client may be able to muster in opposition to the lawyer's position appears to be irrelevant under the majority's approach.

Without any apparent sense of the irony of its position, ELLK asserts that "[t]he notion that [the Torino defendants] can unilaterally decide the amount that is the subject of the dispute simply defies logic." Neither ELLK nor the majority explain why *ELLK's* unilateral decision must be accepted. The majority adds to the irony in stressing that "[t]he proponent of arbitration has the burden of demonstrating that the parties agreed to arbitrate the dispute at issue." After all, the majority denies the Torino defendants any opportunity to meet that burden. The one case the majority cites in support of its conclusion that arbitration cannot be compelled because ELLK contends that more than $50,000 is at issue, *Borovina & Marullo, PLLC v Structured Assets Sales Group, LLC* (17 AD3d 387 [2005]), affords it no support as the opinion does no more than state that more than $50,000 was in dispute (*id.* at 388).

Relatedly, in dismissing as irrelevant the clients' version of a factual dispute between the clients and their attorney, the majority's approach cannot be reconciled with the solicitude courts ordinarily have for the client in attorney-client fee matters (*see Matter of Cooperman*, 83 NY2d 465, 472 [1994] ["attorney-client fee agreements are a matter of special concern to the courts and are enforceable and affected by lofty principles different from those applicable to commonplace commercial contracts"]). No lofty principle affects the majority's analysis. Nor is it easy to reconcile the majority's approach with a key,

pro-client aspect of the arbitration clause mandated by 22 NYCRR part 137—the right to demand arbitration that it confers is conferred solely on the client, not on the client and the attorney.

More fundamentally, however, arbitrability is a matter of contract interpretation (*Matter of Salvano v Merrill Lynch, Pierce, Fenner & Smith*, 85 NY2d 173, 182 [1995] ["arbitration agreements are contracts and must be interpreted under the accepted rules of contract law"]). Thus, in a case similar to this one in which the issue was whether an arbitrability dispute should be resolved by litigation or arbitration, a panel of the District of Columbia Circuit noted that in resolving the arbitrability dispute its task was "to determine which of the two choices appears to be most faithful to the intent of the parties" (*National R.R. Passenger Corp. v Boston & Me. Corp.*, 850 F2d 756, 760 [DC Cir 1988]). In completely disregarding the client's factual contentions, the majority's approach is at odds with basic principles of contract interpretation (*see Metropolitan Life Ins. Co. v Noble Lowndes Intl.*, 84 NY2d 430, 438 [1994] ["A court will endeavor to give the (contract) construction most equitable to both parties instead of the construction which will give one of them an unfair and unreasonable advantage over the other" (citation and internal quotation marks omitted)]). In this respect, the majority's approach puts the client's arbitration rights at the mercy of the attorney (*id.* ["(l)anguage in contracts placing one party at the mercy of the other is not favored by the courts" (citation and internal quotation marks omitted)]). At bottom, it is implausible to suppose that both parties agreed that in the event of an arbitrability dispute like this one the client's version of the disputed facts would be irrelevant.

In conclusively rejecting arbitration at the outset, the majority's approach is also at odds with "the long and strong public policy favoring arbitration" (*Matter of Smith Barney Shearson v Sacharow*, 91 NY2d 39, 49 [1997]). In doing so merely on the strength of the factual assertions of the party opposing arbitration, the majority's approach is inconsistent with the principle that "[a]ny doubts as to whether an issue is arbitrable will be resolved in favor of arbitration" (*State of New York v Philip Morris Inc.*, 30 AD3d 26, 31 [2006], *affd* 8 NY3d 574 [2007]; *see also AT&T Technologies, Inc. v Communications Workers*, 475 US 643, 650 [1986] ["where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that '(a)n order to arbitrate the particular grievance should not be denied unless it may be said with positive assur-

ance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage' "], quoting *Steelworkers v Warrior & Gulf Nav. Co.*, 363 US 574, 582-583 [1960]). After all, the majority's approach peremptorily prevents legitimate doubts about arbitrability from being considered at all.

An approach opposite to the majority's, one that completely disregarded the attorney's factual contentions and directed that such a factual dispute be resolved by arbitration, would be equally flawed, because it would be just as one-sided. But that opposite approach would have at least some support in the language of the retainer agreement, which grants to the client the right to arbitrate "should a fee or cost dispute arise between us concerning an amount between $1,000 and $50,000." Clearly, there is a fee dispute between the parties concerning an amount between $1,000 and $50,000: whether, on account of what was said during the March 22 meeting, the Torino defendants do or do not owe ELLK some $11,000 for legal work performed after March 22. Presumably, ELLK's rejoinder would be that the client should not be permitted to defeat or delay its right to litigate (i.e., secure for the client a right to arbitrate) by carving out of the matters in dispute the dispute over whether ELLK was directed to stop working on March 22. But this rejoinder fails to explain why ELLK should be permitted to secure a right immediately to litigate (i.e., defeat the client's right to arbitrate) by *aggregating* the disputes between the parties.[3]

If we reject the two extremes, pursuant to which arbitrability is definitively resolved at the outset solely on the basis of one side's factual contentions, that leaves two alternatives. As a threshold matter, the issue of whether ELLK was directed to stop working on March 22 could be resolved either by litigation or by arbitration. That is, the court or the arbitration panel could conduct a hearing on whether ELLK had been directed to

---

**3.** In essence, there are at least two disputes between the parties: (1) the reasonableness of the pre-March 22 bill of just under $50,000, and (2) whether ELLK was instructed to stop working on March 22 and therefore has no claim for the nearly $11,000 that it billed for post-March 22 work. Unquestionably, either dispute alone would be arbitrable at the option of the Torino defendants. On the one hand, if attorneys are permitted under the Program to aggregate fee or cost disputes, they will have to that extent an incentive to become enmeshed in additional fee or cost disputes. On the other hand, a reason to conclude that fee or cost disputes can be aggregated—and, in my opinion, a compelling reason—is that the $50,000 limitation would be rendered largely meaningless otherwise. Presumably, after all, only an unusual case would not be divisible into two or more discrete disputes with the amount of each dispute involving a sum of less than $50,000.

stop working and direct litigation or arbitration in accordance with its factual finding. Thus, if ELLK was not instructed to stop working, the amount in dispute at the outset would be deemed to have exceeded $50,000 and the parties would litigate the remaining issues (the reasonableness of the pre-March 22 bill and any objections the Torino defendants may have to the reasonableness of the post-March 22 bill); if ELLK was so instructed, the amount in dispute at the outset would be deemed to have been less than $50,000 and the parties would arbitrate the remaining issue (the reasonableness of the pre-March 22 bill).

I would opt for a judicial rather than an arbitral determination of this threshold issue of fact. Adopting that rule is of course consistent with the settled principle that "[i]t is for the courts to determine whether the . . . particular dispute comes within the scope of their [arbitration] agreement" (*Matter of County of Rockland [Primiano Constr. Co.]*, 51 NY2d 1, 5 [1980]; *see also AT&T Technologies*, 475 US at 649 ["the question of arbitrability—whether (an agreement) creates a duty for the parties to arbitrate (a) particular grievance—is undeniably an issue for judicial determination"]; *id.* ["(u)nless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator"]).

This approach would be consistent as well with the reasoning of the District of Columbia Circuit in *National R.R. Passenger Corp.* (*supra*). In that case, the issue was whether a dispute between the parties to a contract containing a broad arbitration clause over the duration of the contract would be decided by a court or the arbitrators. The court concluded that "a sensible approach" was to "presume that the parties did not intend for disputes over contract duration to be referred to arbitration" if the arbitration clause "is a narrow one, covering only specified types of disputes" (850 F2d at 762). Even in cases involving broad arbitration clauses, however, the court reasoned that disputes over whether the contract had expired should be decided by the court rather than the arbitrator if the contract "with equal clarity provides that it will expire on a date certain" (*id.* at 763). Here, the arbitration clause is narrow in that only a subset of fee and cost disputes are subject to arbitration. All other disputes, such as "claims involving substantial legal questions, including professional malpractice or misconduct" (22 NYCRR 137.1 [b] [3]) and "claims against an attorney for damages or affirmative relief other than adjustment of the fee" (22 NYCRR 137.1 [b] [4]), are not subject to arbitration. Moreover,

akin to the contract provision in *National R.R. Passenger Corp.* specifying that the contract would expire on a date certain, the retainer agreement specifies (albeit with less than perfect clarity) that disputes over a certain amount are not subject to arbitration at the option of the client.

Two final points should be made. First, the approach I would adopt is similar to the one outlined by Professor Siegel for an "arguably inflated" claim by an attorney that the $50,000 arbitration cap has been exceeded (118 Siegel's Practice Review, *Rule 137 on Mandatory Arbitration of Attorney's Fee Disputes,* at 1).[4] Borrowing from federal case law extending to a plaintiff's allegations of the amount in controversy for purposes of federal jurisdiction in diversity cases "a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy" (*Wolde-Meskel v Vocational Instruction Project Community Servs., Inc.,* 166 F3d 59, 63 [2d Cir 1999]), Professor Siegel would "credit[ ] the plaintiff's allegations—unless they are patently and summarily refutable" (118 Siegel's Practice Review, *Rule 137 on Mandatory Arbitration of Attorney's Fee Disputes,* at 1).[5] However, "[i]f the court can determine summarily, and early, that the plaintiff's claim could not support a judgment in excess of $50,000, it should dismiss it then and there, without prejudice to arbitration" (*id.*). Second, a hearing at the behest of the party seeking arbitration should not be had for the asking. As noted, however, in support of their motion to stay this action and compel arbitration, the Torino defendants submitted the affidavit of one of the defendants in which she swore that at the March 22 meeting ELLK was directed to stop any further work.

Accordingly, I would modify the order to the extent of remanding the matter to Supreme Court for a hearing on the threshold question of whether the Torino defendants directed ELLK on March 22 to stop working on the federal action (*see* CPLR 7503 [a]).

**4.** Professor Siegel does not discuss possible cases in which, like this one, the dispute over the applicability of the $50,000 limitation turns on a pure question of historical fact.

**5.** The analogy to the federal approach is imperfect as the presumption accorded to the plaintiff's allegations under federal law does not implicate the contractual rights of one of the parties.