■ PARAMOUNT LEASEHOLD, L.P., Respondent-Appellant, v 43RD STREET DELI, INC., Doing Business as BELLA VITA PIZZERIA, Appellant-Respondent. [26 NYS3d 258]—

Order, Supreme Court, New York County (Shlomo S. Hagler, J.), entered February 5, 2014, which, to the extent appealed from, denied plaintiff landlord's motion for partial summary judgment, and denied defendant tenant's motion to compel arbitration, unanimously modified, on the law, to grant landlord's motion for partial summary judgment, and otherwise affirmed, without costs.

The lease at issue was entered into between plaintiff landlord's predecessor and defendant, which operates a deli in the demised premises. As concerns this appeal, the lease provided for the payment by tenant of fixed rent, additional rent, and a "percentage rent,"[1] which was governed by article 38 of the lease. The lease required tenant to self-report percentage rent, while giving landlord a mechanism to verify, if it chose to, the sums reported by tenant. Thus, article 38E of the lease required tenant to submit statements of the percentage rent due on either an annual or quarterly basis, along with the requisite payment, if any was due. Article 38G dictated that tenant retain, for a period of three years, permanent complete records in accordance with proper accounting principles.

Article 38H provided that landlord had the right to have its

---

1. The "percentage rent" due was to be equal to 10% of the amount by which tenant's "gross sales" (as such term was defined in article 38B) "exceeds the product of the Fixed Rent paid for [any] such calendar year multiplied by (10) ten minus" any real estate taxes paid by tenant for such calendar year pursuant to other applicable lease provisions.

own accountant audit tenant's records to "determine or verify" its gross sales for the purpose of determining the amount of percentage rent owing. In the event that the audit were to "show that Tenant's statement of [g]ross [s]ales for any period has been understated by three (3%) percent or more," tenant was required to pay landlord the cost of the audit in addition to any deficiency, plus interest. Article 38H also provided that landlord's determination as to the proper amount of percentage rent owed was binding and conclusive on tenant, but was subject to arbitration if tenant disputed landlord's calculations.

Article 38I set forth landlord's rights if tenant did not provide the statements required by 38E. In that event, landlord could elect to conduct an audit of whatever books and records were available to it, and to "prepare the statements which [t]enant has failed to prepare and deliver." The audit was to be performed by a certified public accountant of landlord's choosing, and was to be "conclusive," with tenant to "pay on demand" all percentage rent shown to be owing, plus expenses. In stark contrast to article 38H, article 38I did not contain an arbitration clause or otherwise afford tenant an opportunity to challenge landlord's calculations.

The lease further provided, in article 20 and article 24 respectively, that there would be no oral modification or waiver of the terms of the lease. Specifically, article 20 contained a merger clause whereby all understandings and agreements were merged into the lease, and a provision that any further agreements to change or modify the lease would be "ineffective" unless such agreement was "in writing and signed by the party against whom enforcement of the change, modification, discharge or abandonment" was sought. Article 24 also provided, in pertinent part, that no provision of the lease was to be deemed waived by landlord unless such waiver was in writing and signed by it.

On August 2, 2011, landlord delivered a letter to tenant in which it asserted that tenant had not provided the statements of gross sales and in which it informed tenant that it had elected to exercise its right to audit tenant's books and records and, pursuant to article 38I of the lease, prepare its own statements and calculation of the percentage rent. The letter advised tenant that landlord's accountant would appear at the premises 15 days later to perform the audit of tenant's books and records from 2005 through the present.

Tenant responded to landlord two days later by rejecting the audit. It noted that the parties were involved in a separate litigation, and characterized the letter as a discovery request

that should be made directly to the court.[2] It further stated that tenant was required to keep records only for three years, rather than the six years of documents requested by landlord in the audit letter. On August 17, 2011, at the appointed time set forth in the audit letter, landlord's accountant arrived at the premises but left after discovering that there was no one available to discuss tenant's revenues and no records available to review.

Landlord commenced this action, asserting three causes of action seeking judgment and permitting it to conduct an audit pursuant to article 38 of the lease. It also moved for a preliminary injunction enjoining tenant from destroying the relevant books and records, an order directing it to turn over its books and records to landlord's accountants, and a judgment declaring that landlord was entitled to an accounting of tenant's gross sales. Tenant opposed the motion and cross-moved to dismiss the complaint or, in the alternative, to quash a subpoena for documents that landlord had served on its accountants. The court denied the cross motion, and granted landlord's motion to the extent of directing tenant to maintain its records and comply with the subpoena, as limited by the court. The court denied the remainder of the relief sought by landlord on the basis that such would amount to a grant of summary judgment before tenant had even had an opportunity to answer the complaint.

In response to the order, tenant's accountants turned over copies of its tax returns from December 1, 2004 through November 30, 2010. Landlord's accountants performed an audit based on these tax returns and determined that the amount of percentage rent due to it under the lease was $263,114.55, with interest.

Landlord then moved for partial summary judgment in the amount determined by the audit, plus expenses, contending that the percentage rent it sought was "incontrovertible" pursuant to article 38I's own terms. Landlord supported the motion with its accountant's computations and the backup documentation supporting those figures. The motion was further supported by the affidavit of the vice-president of an affiliated entity of landlord, who averred that the amount owing was calculated based on the gross sales figures set forth in the tax returns provided by tenant.

Upon receipt of the motion, John Pappas, tenant's principal,

---

2. The separate action involved an attempt by tenant to renew the lease pursuant to an option contained therein.

served landlord with a letter disputing the results of the audit and demanding arbitration. Tenant also opposed the summary judgment motion with an affidavit from Pappas. Pappas asserted that, even if landlord was entitled to percentage rent, it had improperly calculated the amount due. Specifically, he claimed that landlord had omitted deductions from gross rent, including deductions for tips made to employees and fees for credit card charges, and had also miscalculated real estate tax deductions. Further, Pappas stated, landlord had misstated the amount of fixed rent due under the lease, which was to be deducted from any percentage rent. In any event, Pappas claimed, no percentage rent was due at all because landlord had waived it. Pappas explained as follows: "37. I was advised by Plaintiff's principal, Arthur Cohen, on numerous occasions during the lease term, that Defendant did not have to pay percentage rent to Plaintiff pursuant to the Lease; therefore Plaintiff is now precluded from seeking reimbursement of percentage rent. 38. I remember at least one conversation with Mr. Cohen on this topic took place shortly after I received the improperly inflated water bills.[3] I remember that the conversation took place late in 2005 or early 2006. 39. At the time this cost him nothing since no percentage rent was owed for the year 2005. However, after I expressed my exasperation upon receiving a water bill that was too high by a factor of ten, he attempted to placate me." Tenant moved separately to compel arbitration pursuant to article 38H of the lease.

Supreme Court denied tenant's cross motion to compel arbitration and to stay all proceedings. It found that tenant had "conflate[d] Article 38 (H) and 38 (I)," and that the operative provision of the lease, article 38I, did not provide for arbitration. The court also denied landlord's motion for partial summary judgment. First, the court found that there were several "accounting discrepancies," and thus issues of fact existed with respect to whether the figures arrived at by landlord's accountants had been accurate. Specifically, the court found that there was "at least one glaring mathematical error in calendar year 2009" whereby real estate taxes of $1,278.95 should have been subtracted, rather than added, to the total amount due. Because landlord's accountant had not specifically documented his computations, the court found that it was left to the court to decipher these discrepancies and that it could not do so "without the benefit of further explanation."

With respect to the alleged oral waiver by landlord of the

___

**3.** The separate action also involved landlord's claim that tenant had failed to pay water bills for which it was responsible pursuant to the lease.

percentage rent provision, the court noted that landlord had not responded to Pappas's allegation that Arthur Cohen had told him that tenant did not have to pay it. Landlord's sole reliance on the lease's no-waiver provision in opposition, the court found, was not dispositive because "a contract . . . can be unmade, and a contractual prohibition against oral modification may itself be waived" (internal quotation marks omitted). Moreover, the court found that where a party's conduct induces another's "significant and substantial" reliance on an oral agreement to modify a contract, that party may be estopped from disputing a modification of the contractual terms (internal quotation marks omitted). Applying these principles, the court found that a hearing was required to determine whether landlord had waived its right to percentage rent by way of Cohen's alleged oral representations as set forth in the Pappas affidavit.

A court will not order a party to submit to arbitration "absent evidence of that party's unequivocal intent to arbitrate the relevant dispute and unless the dispute falls clearly within that class of claims which the parties agreed to refer to arbitration" (*Eiseman Levine Lehrhaupt & Kakoyiannis, P.C. v Torino Jewelers, Ltd.*, 44 AD3d 581, 583 [1st Dept 2007] [internal quotation marks omitted]). Tenant contends that the parties agreed to arbitrate this dispute pursuant to article 38H of the lease, and that such article applies because the issue is whether tenant properly accounted to landlord for its gross sales. It argues that, since its accountants ultimately responded to landlord's subpoena and provided tenant's tax returns, permitting landlord to perform an audit, 38H was implicated, with its concomitant arbitration clause.

We disagree. The critical difference between articles 38H and 38I is that the former contemplates voluntary production by tenant of periodic statements, which landlord has the right to verify through an audit, while the latter involves a compulsory audit by landlord to occur upon tenant's failure to produce the statements of its own volition. Tenant undisputedly failed to furnish to landlord the statements required by the lease. Accordingly, landlord resorted to its rights under article 38I. That provision unquestionably does not provide for arbitration if tenant disputes the results of landlord's audit. Accordingly, the court properly denied tenant's motion to compel arbitration. With respect to its cross appeal, landlord claims that the court should have awarded partial summary judgment on its percentage rent claim because the amount was based on tenant's own tax returns and computed by landlord's accountants in accor-

dance with article 38I of the lease, which provided that the audit was to be conclusive and binding. At a minimum, landlord argues, it was entitled to partial summary judgment as to tenant's liability, with the issue of the exact amount of damages to be determined at trial. Landlord contends that the court should have enforced the lease provisions precluding oral modifications and waiver, and rejected tenant's waiver arguments as a matter of law.

According to the express terms of article 38I of the lease, the amount of percentage rent that landlord calculated upon reviewing tenant's books and records became "conclusive" upon tenant. This was sufficient for landlord to satisfy its prima facie burden that it was entitled to judgment as a matter of law (see Home Ins. Co. v Olympia & York Maiden Lane Co., 219 AD2d 469 [1st Dept 1995] [landlord's operating statements became conclusive and binding on tenant pursuant to express provision in lease]). Tenant contends that, even if landlord shifted its burden, it created two separate issues of fact. The first is based on the waiver of the percentage rent provision alleged to have occurred in conversations between Pappas and Cohen. The second arises out of a challenge to the accuracy of the audit itself.

An agreement in a lease providing that no waiver of a term shall be inferred absent a writing to that effect is enforceable (see Jefpaul Garage Corp. v Presbyterian Hosp. in City of N.Y., 61 NY2d 442, 446 [1984]; Community Counseling & Mediation Servs. v Chera, 95 AD3d 639, 640 [1st Dept 2012]). Thus, "if the only proof of an alleged agreement to deviate from a written contract is the oral exchanges between the parties, the writing controls" (Rose v Spa Realty Assoc., 42 NY2d 338, 343 [1977]). Tenant correctly notes that the parties to a contract may, by mutual agreement, disregard a no-waiver clause. However, some performance confirming the modification must be present, and it must be "unequivocally referable to the oral modification" (id.). As stated by this Court, in the context of a lease dispute, there must be "sufficient indicia that the reasonable expectations of both parties under the original lease were supplanted by subsequent actions" (Simon & Son Upholstery v 601 W. Assoc., 268 AD2d 359, 360 [1st Dept 2000]). Thus, there, a new landlord could not, notwithstanding a no waiver clause, enforce a provision in a lease limiting the tenant's use of the premises to upholstery manufacturing, where the prior landlord had not only told the tenant it could create a photography studio in the space, but was actively involved in the modifications necessary to create the studio (id.).

Here, tenant has attempted to establish that it did not pay percentage rent over the years because landlord had orally waived the requirement. However, tenant has failed to establish that nonpayment of the percentage rent was unequivocally referable to the alleged statement (*Rose v Spa Realty Assoc.*, 42 NY2d at 343; *see also Gansevoort 69 Realty LLC v Laba*, 130 AD3d 521 [1st Dept 2015]). To be sure, where a party orally waives a contract provision requiring the other party to perform an affirmative act, it may be difficult for the other party to establish the waiver other than by demonstrating that it did not do the thing it was originally required to do. Nevertheless, a nonbreaching party should not have to litigate the issue based only on the breaching party's unsupported and uncorroborated representation that it orally waived a provision. This is the very reason why many contracts require waivers to be in writing. Such a bald representation is all tenant presents here. Accordingly, it has failed to raise an issue of fact.

Nor has tenant raised an issue of fact regarding the accuracy of the audit. As contemplated by article 38I of the lease, landlord's claim for percentage rent is based on the tax returns provided to it by the tenant, and tenant does not dispute the accuracy of those documents. Again, article 38I provides that landlord's computation of percentage rent "shall be conclusive" on tenant and that tenant "shall" pay the amount owing upon demand. Landlord was entitled to rely on this express provision of the lease (*see Home Ins. Co. v Olympia & York Maiden Lane Co.*, 219 AD2d at 469). In addition, article 38I omitted the dispute resolution mechanism available in 38H, indicating that the parties, in negotiating the lease, consciously meant that tenant's failure to voluntarily provide statements of its gross sales would deprive it of the opportunity to challenge landlord's findings if it was compelled to create the statements itself. We note that nowhere does tenant accuse landlord of operating in bad faith in performing its audit of tenant's revenues. For these reasons, landlord should have been awarded summary judgment on its claim for percentage rent. Concur—Mazzarelli, J.P., Friedman, Gische and Kapnick, JJ.