1890 Adam Clayton Powell LLC, Petitioner-Landlord-Respondent, 
against
Renaud Penant, Respondent-Tenant-Appellant, and Eri Isaka, Jacob Melchior, "John Doe 1" and "John Doe 2," Respondents.



Tenant appeals from a final judgment of the Civil Court of the City of New York, New York County (David J. Kaplan, J.), entered May 13, 2015, after a nonjury trial, which awarded landlord possession in a holdover summary proceeding.




Per Curiam.
Final judgment (David J. Kaplan, J.), entered May 13, 2015, affirmed, with $25 costs.
In sustaining the possessory judgment awarded to landlord on the holdover petition, we reject tenant's specific argument that landlord failed to establish that the apartment's occupants were not permitted residents pursuant to Real Property Law § 235-f. The trial evidence showed, and it was essentially undisputed, that three unrelated roommates resided with tenant in the subject four bedroom apartment, in violation of the lease provision limiting occupancy to "tenant or tenants named above and by the immediate family of the tenant or tenants and by occupants as defined in and only in accordance with Real Property Law § 235-f" (see Roxborough Apts. Corp. v Becker, 296 AD2d 358 [2002]). 
We also reject, as did the trial court, tenant's argument that landlord waived the lease violation, since tenant's factual arguments in support of his waiver claim are negated by the express language of the lease. The lease expressly provides that "only a written agreement between [tenant] and [landlord] can waive any violation of this lease." Here, there was no such written agreement. Nor was the violation waived by landlord's acceptance of rent, since the lease also provided that acceptance of rent does not waive a violation (see Jefpaul Garage Corp. v Presbyterian Hosp. in City of NY, 61 NY2d 442 [1984]; Excel Graphics Tech. v CFG/AGSCB 75 Ninth Ave., 1 AD3d 65 [2003], lv dismissed 2 NY3d 794 [2004]).
Moreover, even assuming that landlord waived any breach of the lease in the past by [*2]accepting rent with knowledge of tenant's multiple unrelated roommates, we reject the argument that any such past waiver precludes enforcement of the occupancy restrictions for the duration of the tenancy. The lease provides that "[e]ven if landlord accepts your rent or fails once or more often to take action against you when you have not done what you agreed to do in this lease, the failure of [landlord] or [landlord's] acceptance of rent does not prevent [landlord] from taking action at a later date if you again do not do what you have agreed to do." This provision is especially applicable here, given the trial evidence that tenant's current roommates were not the same individuals whose occupancy landlord allegedly waived in prior years.
Finally, while parties to a lease may, by mutual agreement, disregard a no-waiver clause, some performance confirming the modification must be present, and it must be "unequivocally referable to the oral modification" (Rose v Spa Realty Assoc., 42 NY2d 338, 343 [1977]). Here, there was no active involvement of landlord indicating an agreement to modify the lease (see Paramount Leasehold, L.P. v 43rd St. Deli, Inc., 136 AD3d 563, 568-569 [2016]; Excel Graphics Tech. v CFG/AGSCB 75 Ninth Ave., 1 AD3d at 70). At most, tenant has shown only a passive acceptance by landlord of prior instances of multiple roommates (see BDCM Opportunity Fund II, LP v Yucaipa Am. Alliance Fund I, LP, 112 AD3d 509, 511-512 [2013], lv dismissed 22 NY3d 1171 [2014]).
We have considered tenant's remaining arguments and find them unavailing. 
I concur I concur I concur

 
Hon. Doris Ling-Cohan
Dissenting Opinion
I respectfully dissent as the evidence shows that the respondent-landlord ("landlord") waived its right to enforce the lease provision limiting occupancy to the tenant and one unrelated roommate.

The unrefuted trial evidence conclusively established that landlord, or its predecessor, was aware for many years that tenant, a jazz musician of limited means, had two or more unrelated roommates residing with him in the subject four-bedroom Harlem apartment, in violation of the lease.[FN1]
 Indeed, the documentary evidence unequivocally demonstrates that landlord accepted separate rent checks from tenant and his (two or more) unrelated roommates in April 2000; and, in 2002, tenant and three (3) unrelated individuals then residing with him, commenced a Housing Part (HP) proceeding against landlord, specifically naming each of the [*3]four (4) individuals in the caption, as petitioners/tenants). Moreover, in such HP action, at least two of tenant's roommates signed a consent order, above a line indicating their title as "petitioner[s]-tenant[s]", as did the landlord. Such act by the landlord in a court of law, on a legal document submitted to the court, constitutes a judicial admission, and was a definitive affirmative act of waiver, rather than a "passive acceptance", further evidencing landlord's knowledge (see Morgenthow & Latham v Bank of New York Co., Inc., 305 AD2d 74 [1st Dept 2003]; GJF Construction, Inc. v Sirius America Insurance Co., 89 AD3d 622 [1st Dept 2011]). Based upon this undisputed proof, and particularly given that landlord signed a consent order with tenant's roommates, it cannot be seriously argued that landlord was unaware that multiple unrelated individuals were residing with tenant in violation of the lease. In fact, the evidence of landlord's knowledge could not have been clearer. It is also obvious that landlord, at best, turned a blind eye to the lease breach or, at worst, stuck its head in the sand like the proverbial ostrich and did not see the open and obvious evidence. In either situation, landlord is properly charged with knowledge (see Seward Park Hous. Corp. v Cohen, 287 AD2d 157 [1st Dept 2001]).

Moreover, given that landlord never previously objected to tenant's breach of the lease, and, in fact, continued accepting rent from tenant for many years, landlord waived the breach. "When rent is accepted with knowledge of particular conduct which is claimed to be a default, the acceptance of such rent constitutes a waiver by landlord of the default" (Atkin's Waste Materials v May, 34 NY2d 422, 427 [1974]). Additionally, the no-waiver provision in the lease does not preclude a finding of waiver, as it has long been the rule that parties may waive a "no-waiver" clause (see Madison Ave. Leasehold, LLC v Madison Bentley Assoc. LLC, 30 AD3d 1, 6 [2006], affd 8 NY3d 59 [2006]). Here, landlord's knowing acceptance of rent, with knowledge of the breach, justifies the inference that landlord chose to hold tenant to the lease and waived the violation (see Lee v Wright, 108 AD2d 678 [1st Dept 1985]). Thus, the lower court's post-trial decision, which awarded possession to landlord in this summary holdover proceeding, should be reversed and the proceeding dismissed. 
THIS CONSTITUTES THE DECISION AND ORDER OF THE COURT.

Decision Date: June 16, 2016



Footnotes

Footnote 1: The unrefuted testimony included that, at the time tenant first took possession of the subject apartment, he informed his original landlord that he planned to live there with roommates, that roommates in fact moved into the apartment with tenant at such time, that prior landlord met his roommates on numerous occasions and accepted rent (in both cash and check) from tenant and his roommates, when landlord personally came to collect the rent each month. Indeed, it would be absurd for a landlord to rent a four bedroom apartment to a single musician of limited means, without the knowledge that the tenant would have roommates renting the other three bedrooms, so that the rental obligations would be met.